902 So.2d 225 (2005)
David Christopher BOSTIC, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-3270.
District Court of Appeal of Florida, Fifth District.
May 13, 2005.
*227 James S. Purdy, Public Defender, and Christopher Sinclair Quarles, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Douglas T. Squire, Assistant Attorney General, Daytona Beach, for Appellee.
PALMER, J.
David Christopher Bostic (defendant) appeals the trial court's order denying his motion to dismiss the information filed against him or, in the alternative, his motion to declare section 790.23 of the Florida Statutes (2001) unconstitutionally vague and overbroad. Concluding that the motion to dismiss was properly denied and that the statute is constitutional, we affirm.[1]
The defendant was charged with committing the crime of possession of a firearm by a convicted felon, in violation of section 790.23(1)(a) of the Florida Statutes (2001). Section 790.23(1)(a) provides:
Felons and delinquents; possession of firearms or electric weapons or devices unlawful.
(1) It is unlawful for any person to own or to have in his or her care, custody, possession, or control any firearm or electric weapon or device, or to carry a concealed weapon, including a tear gas gun or chemical weapon or device, if that person has been:
(a) Convicted of a felony in the court of this state....
§ 790.23(1)(a), Fla. Stat. (2001) (emphasis added).
No dispute exists that the defendant is a convicted felon or that he had in his possession a muzzle-loading rifle, which used black powder (instead of fixed ammunition) and percussion caps as an ignition system. However, in order to establish a prima facie case, the State needed to establish that the rifle which the defendant possessed was a "firearm," as that term is defined in the Florida Statutes.
The term "firearm" is defined in section 790.001(1) and (6), Florida Statutes (2001), as follows:
790.001 Definitions.
As used in this chapter, except where the context otherwise requires:
(1) "Antique firearm" means any firearm manufactured in or before 1918 (including any matchlock, flintlock, percussion cap, or similar early type of ignition system) or replica thereof, whether actually manufactured before or after the year 1918, and also any firearm using fixed ammunition manufactured in or before 1918, for which ammunition is no longer manufactured in the United States and is not readily available in the ordinary channels of commercial trade. Fla. Stat. 790.001(1).
* * *
(6) "Firearm" means any weapon (including a starter gun) which will, is designed to or may readily be converted to *228 expel a projectile by the action of any explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; any destructive device; or any machine gun. The term "firearm" does not include an antique firearm unless the antique firearm is used in the commission of a crime. Fla. Stat. 790.001(6).
§ 790.001(1)(6), Fla. Stat. (2001) (emphasis added).
The defendant filed a motion to dismiss the charge, pursuant to rule 3.190(c)(4) of the Florida Rules of Criminal Procedure,[2] arguing that the rifle he possessed was an "antique firearm" and thus exempted under the Florida Statutes. To support his position the defendant argued that, because his rifle uses black powder instead of fixed ammunition and its ignition system is a form of percussion cap, the weapon was an antique firearm.
In denying the defendant's dismissal motion, the trial court first ruled that dismissal was not warranted because the antique firearm defense is not available to convicted felons. In essence, the trial court interpreted section 790.23 of the Florida Statutes as prohibiting any firearm, whether antique or otherwise, from being possessed by a convicted felon. This ruling was incorrect. On its face, the statute provides that the firearm a convicted felon is prohibited from possessing excludes an "antique firearm." Accordingly, the trial court erred in denying the motion to dismiss on that ground.
However, the trial court further ruled that, as a matter of law, the rifle possessed by the defendant was not an antique firearm, and therefore, dismissal of the information was not warranted. The trial court did not err in denying the motion to dismiss on that ground.
In challenging the trial court's ruling, the defendant argues that the relevant inquiry in determining whether a weapon is an "antique firearm" is exclusively determined by the weapon's ignition system. This argument focuses on the fact that section 790.001(1), Florida Statutes, provides an inclusive phrase in defining an antique firearm as being "any firearm manufactured in or before 1918 (including any matchlock, flintlock, percussion cap, or similar early type of ignition system) or replica thereof, whether actually manufactured before or after the year 1918...." (Emphasis added). We reject this argument as being without merit.
A plain reading of the statute requires that, in order to be exempt, a firearm must be either manufactured in or before 1918 or be a "replica" thereof. A replica is defined by Florida case law as meaning a reasonably exact reproduction of the object involved that, when viewed, causes the person to see substantially the same object as the original. See Harris v. State, 843 So.2d 856, 863 (Fla.2003) (citing Alston v. Shiver, 105 So.2d 785, 791 (Fla. 1958)). Applying this definition to the facts at hand, it is clear that merely having an ignition system similar to that found on an antique firearm is not sufficient to render a firearm a "replica" of a firearm *229 manufactured in or before 1918. The rifle possessed by the defendant, which included visible differences from an antique firearm such as a fiber optic sight, was not a "replica" of a firearm manufactured in or before 1918. Accordingly, the trial court properly denied the defendant's motion to dismiss.
Lastly, we turn to defendant's claim that section 790.001(1) of the Florida Statutes is unconstitutional because the term "replica" is impermissibly vague.
A statute is void for vagueness if it fails to give adequate notice of the conduct it prohibits and which, because of its imprecision, may invite arbitrary and discriminatory enforcement. Bouters v. State, 659 So.2d 235 (Fla.1995). "The test of a statute insofar as vagueness is concerned is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice.... `The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" Alexander v. State, 477 So.2d 557, 560 (Fla.1985) (quoting Zachary v. State, 269 So.2d 669 (Fla.1972)).
Applying this test to the statute at issue, we affirm the trial court's determination that the statute is constitutional because the term "replica" is not so vague as to render the statute unconstitutional.
AFFIRMED.
GRIFFIN, J., concurs.
SHARP, W., J., dissents, with opinion.
SHARP, W., dissenting.
I respectfully dissent because in my opinion, sections 790.23 and 790.001(6) either clearly permit a felon to own and possess (if not used in the commission of a crime) black-powder rifles, or if not, then the statutes are unconstitutionally vague as applied in this case. Section 790.23 provides as follows:
790.23. Felons and delinquents; possession of firearms, ammunition, or electric weapons or devices unlawful
(1) It is unlawful for any person to own or to have in his or her care, custody, possession, or control any firearm, ammunition, or electric weapon or device, or to carry a concealed weapon, including a tear gas gun or chemical weapon or device, if that person has been:
(a) Convicted of a felony in the courts of this state ...
The trial judge concluded this section prohibits a felon from possessing any firearm, even an antique. However, "firearm" is defined as generally excluding an antique firearm:
(6) "Firearm" means any weapon (including a starter gun) which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; any destructive device; or any machine gun. The term "firearm" does not include an antique firearm unless the antique firearm is used in the commission of a crime. (emphasis added)
§ 790.001(6), Fla. Stat.
In turn, an "antique firearm" is defined as:
(1) "Antique firearm" means any firearm manufactured in or before 1918 (including any matchlock, flintlock, percussion cap, or similar early type of ignition *230 system) or replica thereof, whether actually manufactured before or after the year 1918, and also any firearm using fixed ammunition manufactured in or before 1918, for which ammunition is no longer manufactured in the United States and is not readily available in the ordinary channels of commercial trade.
§ 790.001(1), Fla. Stat.
The record establishes, for purposes of the c-4 motion, that the defendant, Bostic, has two felony convictions. Bostic likes to hunt and set out to determine whether he could legally possess any type of gun for hunting. Bostic read Florida and federal law, contacted the Florida Department of Law Enforcement and the Bureau of Alcohol, Tobacco, and Firearms, and consulted with two separate firearm dealers.
Based on the information he obtained, Bostic purchased a Thompson Center Arms Model Black Diamond muzzle-loading rifle from a Wal-Mart store. This rifle is an in-line percussion-cap, black-powder weapon. The rifle is loaded with a propellant through the muzzle and tapped into place with a ram rod. The ignition system uses a percussion cap, a copper cap with an explosive substance to cause the flame to ignite the propellant.
Bostic believed this rifle was a replica of an antique and thus not a "firearm" for purposes of section 790.23. Wal-Mart also believed this since it sold the rifle to Bostic without the background check required for the purchase of a firearm. This belief was reinforced when Bostic obtained a permit to legally hunt with a muzzle loading rifle. Bostic stored the rifle in his closet at home and never used it in the commission of a crime.
Despite his efforts, Bostic was arrested at home and charged with possession of a firearm by a convicted felon. Bostic moved to dismiss the charge, arguing that the gun he purchased is not a firearm under section 790.23. He also moved to declare section 790.23 unconstitutional as void for vagueness.
At the hearings on these motions, Bostic testified that he was told by the firearm dealers that a muzzle loader would be a replica of an antique firearm. Bostic produced a letter from Curtis Bartlett, Chief of the Firearms Technology Branch at ATF, who stated that Bostic's gun qualified as an antique firearm under federal law.
Chad Albritton, a law enforcement officer with the Florida Fish and Conservation Commission, testified he was aware that convicted felons used black powder guns to legally hunt. Officer Albritton testified that convicted felons could legally use guns, such as the Thompson Black Diamond muzzle-loading rifle, to hunt. This conclusion is based upon the "state definition." Officer Albritton found felons in possession of black powder guns "routinely" and did not arrest them because, "It is not illegal for them to have it."
Sergeant Ben Allen, a game officer with the Florida Fish and Wildlife Conservation Commission, testified that he received legal instruction as part of his training. In that instruction, game officers were taught that it is illegal for a felon to possess a firearm. However, a black powder gun did not fit the definition of a firearm.
Sergeant Allen also testified that to qualify as an antique, the gun need not be manufactured prior to 1918, only that it be a replica. The relevant inquiry is the kind of ignition system the gun has, not the style of the gun (or how it looks).
Cheryl Brill, a sporting goods manager at Wal-Mart, testified that Wal-Mart is a federally licensed firearms dealer and receives information from both the ATF and FDLE. According to Brill, the purchase of a black powder gun does not require a *231 background check because a black powder gun is not considered a "firearm." The black powder muzzle loader gun is "sitting right on the side counter. They [purchasers] can just pick it up, put it in their buggy and walk out the door." Brill testified that the gun in question is considered a primitive weapon because the ignition system takes a percussion cap and black powder.
Warren Schroeder, the owner of Palatka Federal Army Navy and a federally licensed firearms dealer, testified the Thompson Black Diamond muzzle-loading rifle is classified as an antique weapon under federal law because of its percussion ignition system. A percussion cap is a copper cap that produces the spark that ignites the black powder in the gun through a nipple and hammer. Such an ignition system is considered primitive and Florida law specifically refers to percussion caps in its definition of a antique firearm. According to Florida law, such a rifle need not be logged because it is not considered a firearm.
Schroeder also testified that pursuant to section 790.065, he may not sell a firearm to a convicted felon, otherwise he would be subject to a felony criminal charge. However, certain black powder guns do not qualify as "any firearm" according to state and federal law as explained to him by the ATF. The purchase of the Thompson Black Diamond muzzle loading rifle by a convicted felon does not require a background check.
For a criminal statute to withstand a challenge under the void for vagueness doctrine, the statute must provide adequate notice of the conduct it prohibits when measured by common understanding and practice and must define the offense in a manner that does not encourage arbitrary and discriminatory enforcement. State v. Brake, 796 So.2d 522 (Fla.2001). The void-for-vagueness doctrine focuses on actual notice to citizens but more importantly, the requirement that the legislature establish minimal guidelines to govern law enforcement. Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." Kolender, 461 U.S. 352 at 358, 103 S.Ct. 1855, 75 L.Ed.2d 903, quoting Smith v. Goguen, 415 U.S. 566, 574, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). Here the evidence shows a wide-spread "common understanding and practice" even among law enforcement that the type of weapon purchase by Bostic is not prohibited by section 790.23.
My first choice would be to hold the statute clear so as to permit Bostic to possess this rifle under these circumstances. If not, then I think these laws are so vague as to not only confuse the experts, but the average person who seeks to comply with them and thus they are unconstitutional.
The common understanding and practice is on Bostic's side, that he can lawfully possess this rifle. However, an argument could be made that "law" is far from settled as to the scope of section 790.23. In Williams v. State, 492 So.2d 1051 (Fla. 1986), receded from on other grounds by Brown v. State, 719 So.2d 882 (Fla.1998), the Florida Supreme Court affirmed the defendant's conviction for possession of a firearm by a convicted felon under section 790.23. Williams, a convicted felon who previously committed armed robbery, had concealed a loaded pistol and carried it in a high crime area. Williams argued that section 790.23 did not apply since the pistol was allegedly an antique or replica. The Florida Supreme Court rejected this argument, explaining as follows:
*232 Defendant claims that the trial court erred in denying the motion for judgment of acquittal because defendant, through expert testimony, created a reasonable doubt as to whether the gun in question was an antique or a replica thereof. Defendant's contention is based on section 790.23, Florida Statutes (1983), which prohibits a convicted felon from possessing a firearm unless it is an antique or a replica thereof. The First District Court of Appeal properly affirmed the trial court's denial of defendant's motion for acquittal. Though petitioner presented a firearms expert who testified that he was reasonably certain the gun found on defendant was an antique, on cross-examination the expert admitted that the gun, with its plastic handles, could have been manufactured many years after it was patented. The expert testified further that the dates stamped on the barrel of the gun were the dates of its patents, not necessarily its manufacture. The ambiguity surrounding the date of manufacture of the gun left it a fact for jury determination.
In the alternative, defendant focuses on the "or replica thereof" wording of the statute, claiming that the gun, if not an antique, was certainly a replica of an antique. Williams would have us construe the antique "or replica" exceptions of section 790.23 in such a way as to condone the concealment, by a convicted felon, of a firearm which may possibly be a replica of an antique, but is obviously operable and loaded with live ammunition. We do not believe that the legislature, when enacting section 790.23, intended that a convicted felon could be acquitted when possessing a concealed, loaded weapon by using the excuse that the weapon is an antique or a replica thereof. This literal requirement of the statute exalts form over substance to the detriment of public policy, and such a result is clearly absurd. It is a basic tenet of statutory construction that statutes will not be interpreted so as to yield an absurd result. (emphasis added)
492 So.2d at 1053-1054.
On the one hand, the court in Williams acknowledges that section 790.23 allows a felon to legally possess an antique or replica of an antique. On the other hand, it says that a felon cannot rely on the fact that the firearm may be an antique or replica of an antique to escape prosecution. It may be that the Williams court was concerned about the concealment aspect, but the case nevertheless states the defendant was convicted of merely possessing a firearm.
If the statutes are so interpreted, section 790.23 simply cannot withstand a void-for-vagueness challenge. Does it prohibit a convicted felon from possessing any firearm unless it is an antique or a replica, as the definitions in section 790.001 provide and Williams states? Does it provide that a convicted felon cannot possess any firearm whatsoever, even an antique or replica, as the trial judge found and as Williams also states? Or does it provide for something in the middle where it is left to a jury to determine, by applying the definition in section 790.001(6), whether a particular weapon is prohibited or not, as the majority opinion suggests? One jury could decide the same rifle in question is a replica and another decide it is not. In my view, any of these interpretations of these criminal statutes fail to provide adequate notice of the conduct they prohibit and they lack the specificity needed to constitutionally convict and punish.
NOTES
[1] The defendant entered a plea of no contest to an amended information, and specifically reserved the right to appeal the denial of his motion to dismiss and his motion challenging the constitutionally of the statute. The State stipulated that the trial court's rulings were dispositive.
[2] The function of a motion to dismiss is to require the State to present a prima facie case of guilt against the accused, similar to a summary judgment in a civil case. "If the undisputed facts do not legally constitute prima facie proof of the crime charged, or if they affirmatively establish a valid defense, a motion to dismiss should be granted. However, if the undisputed facts permit the conclusion the defendant could be found guilty of the charged crime, the motion must be denied." State v. Williams, 873 So.2d 602, 604 (Fla. 5th DCA 2004). In addition, all reasonable inferences that arise from the undisputed facts must be taken in a light most favorable to the prosecution's case. Id.