# Supreme Court of Florida

_____

No. SC14-1856
_____

**STATE OF FLORIDA,**
Petitioner,

vs.

**CHRISTOPHER DOUGLAS WEEKS,**
Respondent.

[September 22, 2016]
**<u>CORRECTED OPINION</u>**

PARIENTE, J.

The issue raised in this case is whether the "felon-in-possession" statute,

section 790.23, which prohibits convicted felons from possessing "any firearm," is

unconstitutionally vague with respect to the meaning of a "replica" of an "antique

firearm" as those terms are used in section 790.001(1).  The First District Court of

Appeal in <u>Weeks v. State</u>, 146 So. 3d 81 (Fla. 1st DCA 2014), held section 790.23,

Florida Statutes (2012), unconstitutionally vague.  Accordingly, we have

mandatory jurisdiction pursuant to article V, section 3(b)(1), of the Florida

Constitution.  The First District also certified its decision was in direct conflict

with the decision of the Fifth District Court of Appeal in <u>Bostic v. State</u>, 902 So.

2d 225, 229 (Fla. 5th DCA 2005), <u>review denied</u>, 912 So. 2d 1217 (Fla. 2005), which concluded that section 790.23 was not unconstitutionally vague. We therefore also have jurisdiction on that basis. <u>See</u> art. V, § 3(b)(4), Fla. Const.

We conclude that we need not reach the merits of the constitutional issue because in employing principles of statutory construction, we construe the term "replica" in the statutory definition of section 790.001(1) as emphasizing the antique firearm's ignition or firing system as its distinctive feature.[1] Accordingly, we approve the First District's reversal of Petitioner's conviction for possession of a firearm by a convicted felon and the vacatur of his sentence, but not its conclusion that section 790.23 is unconstitutionally vague. We disapprove the Fifth District's contrary decision in <u>Bostic</u>.

## FACTS

On the afternoon of February 4, 2012, a Florida Fish and Wildlife Conservation Commission officer observed Christopher Weeks's pickup truck parked on the shoulder of a road in the Blackwater Wildlife Management Area in Santa Rosa County. Weeks was wearing a camouflage cap, shirt, pants, and a hunter-orange vest. The officer observed a deer grunt call on the passenger seat and a Traditions .50 caliber muzzleloader rifle with a scope in between the seats of

---

1. We use the phrases "ignition system" and "firing system" interchangeably, as both refer to the firearm's propulsion mechanism.

the truck. Weeks, who admitted to having been previously convicted of a felony, was charged with one count of possession of a firearm by a convicted felon.

Weeks moved to dismiss the charge, arguing that his rifle is a permissible antique firearm or replica thereof under section 790.23, or in the alternative, that the felon-in-possession statute is unconstitutionally vague if convicted felons are prohibited from possessing black-powder rifles. At the hearing on the motion to dismiss, Weeks testified that he researched the law along with his wife and father and concluded that he was permitted to use a black powder muzzleloader rifle with a percussion cap ignition system to hunt because it was a replica of an antique firearm.

Weeks's wife, who purchased the gun, testified that her research also revealed that Weeks was allowed to hunt with an antique replica muzzleloader rifle employing a percussion cap ignition system. Weeks testified that his father, a retired law enforcement firearms instructor, also maintained that Weeks was allowed to possess the muzzleloader rifle. In fact, according to Weeks's wife's testimony, Weeks's father purchased the rifle's black powder and percussion caps.[2]

In opposing the motion to dismiss, the State relied on the Fifth District's decision in Bostic, 902 So. 2d at 229, which held that the felon-in-possession

---

2. Weeks's father did not testify at the hearing.

statute was constitutional.  Properly determining that there was no controlling precedent in the First District,[3] the trial court followed Bostic and denied Weeks's motion to dismiss, which the parties stipulated was dispositive.  Weeks, 146 So. 3d at 82.  Thereafter, Weeks entered a plea of no contest to one count of constructive possession of a firearm by a convicted felon.  The trial court adjudicated Weeks guilty of the offense and sentenced him to three years' probation.

Weeks appealed his felon-in-possession conviction, claiming that section 790.23 is unconstitutionally vague.  Id.  The First District observed that Weeks added a scope to his rifle, which "apparently was not available in or before 1918." Id. at 84.  The district court determined that "the firing or ignition mechanism of the firearm determines whether a firearm qualifies as an 'antique firearm' or a replica thereof," expressing that "the distinctive feature of an antique firearm as defined in section 790.001 is the firing system."  Id. at 83, 84.  The First District held that section 790.23 "is unconstitutional with respect to the possession of a replica of an antique firearm by a convicted felon," id. at 82, and concluded as follows:

> [W]e hold section 790.23 is unconstitutionally vague as to antique replica firearms because the phrases "firearm" and "antique firearm" defined in chapter 790, do not give adequate notice of what constitutes

3. Based on the decision in Pardo v. State, 596 So. 2d 665, 666 (Fla. 1992), "in the absence of interdistrict conflict, district court decisions bind all Florida trial courts."

a permissible replica of an antique firearm which may be lawfully carried by a convicted felon; therefore, arbitrary and discriminatory enforcement of section 790.23 may result.

Id. at 85. The district court therefore reversed Weeks's conviction, vacated his sentence, and certified conflict with the decision of the Fifth District in Bostic.

**ANALYSIS**

The issue presented in this case is whether the felon-in-possession statute, section 790.23, is unconstitutionally vague with respect to the possession of a "replica" of an "antique firearm," as defined in section 790.001(1). The standard of review is de novo. See State v. Catalano, 104 So. 3d 1069, 1075 (Fla. 2012) ("A court's decision regarding the constitutionality of a statute is reviewed de novo as it presents a pure question of law."); State v. Rubio, 967 So. 2d 768, 771 (Fla. 2007) ("Because each of these issues concern questions of statutory constitutionality or construction, we review each issue de novo.").

"This Court is bound to resolve all doubts as to the validity of the statute in favor of its constitutionality, provided the statute may be given a fair construction that is consistent with the federal and state constitutions as well as with legislative intent." Heart of Adoptions, Inc. v. J.A., 963 So. 2d 189, 207 (Fla. 2007) (citation omitted). In ascertaining whether section 790.23 may be given a fair construction, we first review the statutory language of the felon-in-possession statute. Next, we review the two constructions of the statute by the First District in Weeks and the

Fifth District in Bostic.  Finally, by applying well-established principles of statutory construction, we conclude that we are able to construe the statute in a manner that avoids holding it unconstitutionally vague and does not effectively rewrite the statute.  See State v. Stalder, 630 So. 2d 1072, 1076 (Fla. 1994).

**The Felon-in-Possession Statute**

The felon-in-possession statute, section 790.23, "is intended to protect the public by preventing the possession of firearms by persons who, because of their past conduct, have demonstrated their unfitness to be entrusted with such dangerous instrumentalities."  State v. Snyder, 673 So. 2d 9, 10 (Fla. 1996).  The statute makes it a second-degree felony for a convicted felon to "own or to have in his or her care, custody, possession, or control any firearm," unless his or her "civil rights and firearm authority have been restored."  § 790.23(1)(a), (2), (3), Fla. Stat. (2012).  The term "firearm" is defined in the statutory scheme as follows:

> any weapon (including a starter gun) which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; any destructive device; or any machine gun. The term "firearm" does not include an antique firearm unless the antique firearm is used in the commission of a crime.

§ 790.001(6), Fla. Stat. (2012) (emphasis added).

As is evident by the statutory definition of "firearm," the Legislature has exempted "antique firearm" from the statutory prohibition.  This exemption has remained unchanged since the statutory definition was enacted in 1969.  See

- 6 -

Chapter 69-306, Laws of Florida (1969).  The term "antique firearm" is defined to mean:

> any firearm manufactured in or before 1918 (including any matchlock, flintlock, percussion cap, or similar early type of ignition system) or replica thereof, whether actually manufactured before or after the year 1918, and also any firearm using fixed ammunition manufactured in or before 1918, for which ammunition is no longer manufactured in the United States and is not readily available in the ordinary channels of commercial trade.

§ 790.001(1), Fla. Stat. (2012) (emphasis added).  Thus, under the statutory definition of "antique firearm," the firearm can have an operable ignition or firing system.  Although the type of firing system described in section 790.001 may be operable, these firing systems date back to the mid-19th century, and a firearm with such a firing system cannot load ammunition as easily as modern firearms.

Indeed, as Judge Sharp of the Fifth District noted, after reviewing expert testimony about the operation of replica black powder muzzleloader rifles with a percussion cap ignition system, such a firearm is a "primitive weapon because the ignition system takes a percussion cap and black powder."  Bostic, 902 So. 2d at 231 (Sharp, J., dissenting).  A rifle with a percussion cap ignition system "is loaded with a propellant through the muzzle and tapped into place with a ram rod.  The ignition system uses a percussion cap, a copper cap with an explosive substance to cause the flame to ignite the propellant."  Id. at 230.  Or, as the trial judge in this case stated after listening to Weeks similarly explain how he loaded his black

powder muzzleloader firearm with a percussion cap ignition system, "I'll tell you what, after listening to all that testimony about that gun, [Weeks] would be in a world of hurt if a bear was charging after him to reload."

**The District Court Decisions**

The certified conflict decision, in addressing a constitutional vagueness and overbreadth challenge to section 790.23, concluded that the statute was not unconstitutionally vague, "because the term 'replica' is not so vague as to render the statute unconstitutional." Bostic, 902 So. 2d at 229. The Fifth District's conclusion was buttressed by a "plain reading analysis" that concluded that because the term "replica" was defined by caselaw as a "reasonably exact reproduction of the object involved that, when viewed, causes the person to see substantially the same object as the original," a permissible replica firearm under the statute would have to be an exact copy in every respect. Id. at 228 (citing Harris v. State, 843 So. 2d 856, 863 (Fla. 2003)).

Judge Sharp dissented, and in arguing that the statute was unconstitutionally vague, noted after recounting testimony from firearm instructors, firearm dealers, and law enforcement officers that "common understanding and practice is on Bostic's side," because, the "relevant inquiry is the kind of ignition system the gun has, not the style of the gun (or how it looks)." Bostic, 902 So. 2d at 230 (Sharp, J., dissenting). Supporting the conclusion that a replica of a muzzleloader rifle was

commonly understood to be a permissible replica under the statute, Judge Sharp noted that "Wal-Mart . . . sold the rifle to Bostic without the background check required for the purchase of a firearm," and "Bostic obtained a permit to legally hunt with a muzzle loading rifle." Id.

Judge Sharp noted, however, that "an argument could be made that 'law' is far from settled as to the scope of section 790.23" because of this Court's decision in Williams v. State, 492 So. 2d 1051 (Fla. 1986), receded from on other grounds, Brown v. State, 719 So. 2d 882 (Fla. 1998). Bostic, 902 So. 2d at 231 (Sharp, J., dissenting). As Judge Sharp explained, in Williams, this Court affirmed a defendant's conviction for possession of a firearm by a convicted felon under section 790.23 even though the defendant argued that his firearm "was allegedly an antique or replica." Id. Our opinion in Williams, Judge Sharp observed, could lead to confusion over what type of conduct section 790.23 prohibits because

> [O]n the one hand, the court in Williams acknowledges that section 790.23 allows a felon to legally possess an antique or replica of an antique. On the other hand, it says that a felon cannot rely on the fact that the firearm may be an antique or replica of an antique to escape prosecution. It may be that the Williams court was concerned about the concealment aspect, but the case nevertheless states the defendant was convicted of merely possessing a firearm.

Id. at 232.

For reasons similar to those expressed by Judge Sharp, the First District in Weeks held section 790.23 unconstitutionally vague. In analyzing whether the

- 9 -

statute "gives a person of ordinary intelligence fair notice of what constitutes forbidden conduct," the First District undertook a plain language analysis. The First District rejected the Bostic court's definition of "replica" because it relied on a definition of the term as defined by this Court in Harris, which, as the First District concluded, was distinguishable. Weeks, 146 So. 3d at 84. As the First District further explained,

> the Harris court was referring to an object which could be used at trial as demonstrative evidence. 843 So. 2d at 863. A replica, as demonstrative evidence, must be a reasonably exact reproduction so that the jury is not misled as to the nature of the original. Id. Thus, in Harris, the court was eager to avoid misleading a jury. No such concern is presented in the case at bar.

Id. The First District in Weeks also addressed this Court's decision in Williams, but concluded that the decision was not controlling because

> Williams did not consider specifically a challenge to the constitutionality of section 790.23. Instead, the issue before the court was whether the trial court erred in denying a motion for a judgment of acquittal made on the ground that the defendant has created reasonable doubt as to whether the gun in question in that case was an antique or a replica thereof.

Id. at 84-85. Determining that Williams did not control its review of Weeks's motion to dismiss, the First District concluded that because a "plain language" analysis relying on the Harris court's definition of "replica," when viewed against the backdrop of "common understanding and practice" did not provide "adequate notice of what constitutes a permissible replica of an antique firearm which may be

- 10 -

lawfully carried by a convicted felon," the statute was unconstitutionally vague. See id. The First District's conclusion was buttressed by its interpretation of the statute as expressing that the firing system is the "distinctive feature of an antique firearm as defined by section 790.001." Id. at 84.

**Statutory Construction**

Our guiding principle when construing a statute is to "effectuate the intent of the Legislature." Borden v. East-European Ins. Co., 921 So. 2d 587, 595 (Fla. 2006). Therefore, "we are 'without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.' " Velez v. Miami-Dade Cty. Police Dep't, 934 So. 2d 1162, 1164-65 (Fla. 2006) (quoting McLaughlin v. State, 721 So. 2d 1170, 1172 (Fla. 1998)).

As we have previously explained, "legislative intent is determined primarily from the statute's text." Heart of Adoptions, Inc., 963 So. 2d at 198. Therefore, the starting point of our statutory construction analysis is a search of the text of the statute for plain meaning. In ascertaining the plain meaning of statutory language, consulting dictionary definitions is appropriate. See License Acquisitions, LLC v. Debary Real Estate Holdings, LLC, 155 So. 3d 1137, 1144 (Fla. 2014); see also L.B. v. State, 700 So. 2d 370, 372 (Fla. 1997).

In this case, the dictionary definition of "replica" does not assist a plain language analysis because, as the First District explained, a dictionary definition of "replica" does not favor one conclusion over another as to what constitutes a permissible replica of an antique firearm:

> Webster's New Universal Unabridged Dictionary (Deluxe Second Edition) defines replica as "any very close reproduction or copy." For some, a firearm with a percussion cap firing system as well as a scope may still be a reasonably exact reproduction of an antique firearm so as to qualify as a replica.

Weeks, 146 So. 3d at 84.[4]

We conclude that legislative intent is unclear from the plain language of the statute and agree with the First District that the definition of "replica" as defined by this Court in Harris does not assist a plain language analysis of the statute. Weeks, 146 So. 3d at 84-85. Because dictionary and caselaw definitions of the

---

4. Justice Lewis observes that the First District incorrectly concluded that "Black's Law Dictionary does not define the term 'replica,' " Weeks, 146 So. 3d at 84, when in fact Black's Law Dictionary defines the term as "[a] reasonably exact duplicate that, when viewed, causes people to see substantially the same object as the original; a good copy, [especially] of an artifact, building, or work of art." Replica, Black's Law Dictionary (10th ed. 2014) (emphasis added). See also Lewis, J., dissenting op. at 20. However, we disagree with Justice Lewis that this definition offers any further clarification than the non legal dictionary definition of the term the First District relied on in Weeks, or mandates that a replica must look identical to the original article. See Lewis, J., dissenting op. at 21. Indeed, "[f]or some, a firearm with a percussion cap firing system as well as a scope may still be [substantially the same] as an antique firearm so as to qualify as a replica." Weeks, 146 So. 3d at 84.

- 12 -

term "replica," as well as the legislative history of the statute are unavailing in ascertaining legislative intent, we look to other canons of statutory construction to derive legislative intent. Joshua v. City of Gainesville, 768 So. 2d 432, 435 (Fla. 2000). An important canon is that of ejusdem generis, "which states that when a general phrase follows a list of specifics, the general phrase will be interpreted to include only items of the same type as those listed." State v. Hearns, 961 So. 2d 211, 219 (Fla. 2007). "Distilled to its essence, this rule provides that where general words follow an enumeration of specific words, the general words are construed as applying to the same kind or class as those that are specifically mentioned." Fayad v. Clarendon Nat'l Ins. Co., 899 So. 2d 1082, 1088-89 (Fla. 2005). See also Arnold v. Shumpert, 217 So. 2d 116, 119 (Fla. 1968). A related canon of statutory construction is noscitur a sociis, which instructs that "a word is known by the company it keeps." Nehme v. Smithkline Beecham Clinical Labs., Inc., 863 So. 2d 201, 205 (Fla. 2003).

Pursuant to section 790.001(1), besides mandating that the type of firearm, to be an "antique firearm," must have been manufactured "in or before 1918," or be a replica thereof, the Legislature described such a firearm as one "including any matchlock, flintlock, percussion cap, or similar early type of ignition system . . . ." Therefore, one interpretation of the statute is that the distinctive feature of an

- 13 -

"antique firearm" or its replica is the firearm's ignition or firing system.  See

Weeks, 146 So. 3d at 83-84.  As the First District more fully explained:

> [T]he term "antique firearm" not only includes a firearm
> manufactured in or before 1918 which may possess a matchlock,
> flintlock, percussion cap, or a firearm with a similar firing system, but
> also a replica of such.  Given this definition, the firing or ignition
> mechanism of the firearm determines whether a firearm qualifies as an
> "antique firearm" or a replica thereof regardless of the date of
> manufacture.

Id. at 83.  Accordingly, a firearm that employs a "matchlock, flintlock, percussion

cap, or similar early type of ignition system" is one reasonable construction of the

term "replica" as used in the statutory scheme.

This construction is also favored by another canon of statutory construction,

the rule of lenity.  "[W]hen criminal statutes are subject to competing, albeit

reasonable, interpretations, they must be 'strictly construed . . . most favorably to

the accused." Polite v. State, 973 So. 2d 1107, 1111 (Fla. 2007) (quoting §

775.021(1), Fla. Stat. (2002)).  This extremely important statutory canon is

codified in section 775.021(1), Florida Statutes (2012), which provides that, "[t]he

provisions of this code and offenses defined by other statutes shall be strictly

construed; when the language is susceptible of differing constructions, it shall be

construed most favorably to the accused."  § 775.021(1), Fla. Stat. (2012).  See

also Watson v. Stone, 4 So. 2d 700, 701 (Fla. 1941) (applying rule of lenity when

defendant was convicted for "manual[ly] possessi[ing]" a firearm when the defendant kept a firearm in his automobile glovebox).

The rule of lenity is a "fundamental tenet of Florida law regarding the construction of criminal statutes, which weighs in favor of the defendant." Polite, 973 So. 2d at 1112. It is a "canon of last resort." Kasischke v. State, 991 So. 2d 803, 814 (Fla. 2008). "[T]he rule is not just an interpretative tool, but a statutory directive." Id. As we explained in Kasischke,

> The rule requires that "[a]ny ambiguity or situations in which statutory language is susceptible to differing constructions must be resolved in favor of the person charged with an offense." State v. Byars, 823 So. 2d 740, 742 (Fla. 2002) (emphasis added). As we have emphasized before, " '[o]ne of the most fundamental principles of Florida law is that penal statutes must be strictly construed according to their letter.' " Id. (quoting Perkins v. State, 576 So. 2d 1310, 1312 (Fla. 1991)). "Indeed, our system of jurisprudence is founded on a belief that everyone must be given sufficient notice of those matters that may result in a deprivation of life, liberty, or property." Perkins, 576 So. 2d at 1312; see also United States v. Santos, 553 U.S. 507, 514 (2008) (plurality opinion) ("Under a long line of our decisions, the tie must go to the defendant. The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."); State v. Winters, 346 So. 2d 991, 993 (Fla. 1977) ("Penal statutes must be strictly construed in favor of the accused where there is doubt as to their meaning and must be sufficiently explicit so that men of common intelligence may ascertain whether a contemplated act is within or without the law, and so that the ordinary man may determine what conduct is proscribed by the statute.").

Id.

After applying the rules of statutory construction, we conclude that the felon-in-possession statute is subject to competing reasonable constructions. One

reasonable construction of the term may lead to an interpretation that "replica" means an exact copy in every respect. Another reasonable construction of the term, as advanced by the First District in Weeks, and as our statutory construction analysis demonstrates, is that section 790.001(1) emphasizes the ignition system as the distinctive feature of an "antique firearm," and therefore requires that the firearm possess a certain type of ignition system explicitly mentioned by the statute. In short, the statutory term "generate[s] differing reasonable constructions," which require application of the rule of lenity. Nettles v. State, 850 So. 2d 487, 494 (Fla. 2008). Accordingly, pursuant to the rule of lenity, we construe section 790.23 in favor of the reasonable construction advanced by Weeks.

### This Case

In this case, Weeks wanted to go hunting and, with his wife and his father, researched the law and determined that sections 790.001(1) and 790.001(6) allowed him to possess a replica of a 1918 black powder muzzleloader rifle with a percussion cap ignition system under section 790.23. Weeks's Traditions .50 caliber muzzleloader rifle used a type of firing system specifically mentioned by section 790.001(1). His rifle was modified only with respect to the attached scope. When the felon-in-possession statute is construed in the light most favorable to the

- 16 -

defendant, Weeks's rifle's attached scope did not remove his firearm from the statutory exemption.

## CONCLUSION

In light of the foregoing, we approve the First District's reversal of Weeks's conviction and the vacatur of his sentence, but not its conclusion that section 790.23 is unconstitutionally vague. Instead, we conclude that a "replica" of an "antique firearm" under the statutory definition is reasonably construed as emphasizing the type of firing system of the replica antique firearm as its distinctive feature. We additionally disapprove the Fifth District's decision in Bostic and recede from our prior decision in Williams, 492 So. 2d at 1054, to the extent that the statutory interpretation in those decisions is inconsistent with this opinion. Accordingly, Weeks was entitled to the statutory exception of the felon-in-possession statute because his firearm was a permissible "replica" of an "antique firearm" under section 790.23 as defined in section 790.001(1).

It is so ordered.

LABARGA, C.J., and POLSTON, and PERRY, JJ., concur.
CANADY, J., concurs with an opinion, in which LABARGA, C.J., and POLSTON, J., concur.
LEWIS, J., dissents with an opinion, in which QUINCE, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., concurring.

I concur with the decision to approve the result reached by the First District, and to disapprove the decision of the Fifth District in Bostic v. State, 902 So. 2d 225 (Fla. 5th DCA 2005). I also agree with receding from the holding of Williams v. State, 492 So. 2d 1051, 1054 (Fla. 1986), that the "literal requirement" of "the antique 'or replica' exceptions" to section 790.23's prohibition on the possession of firearms by felons is "clearly absurd."

The proper disposition of this case turns on the definition of "antique firearm" set forth in section 790.001(1). Under the rule of lenity codified in section 775.021(1), this definition must "be strictly construed." Accordingly, to the extent that "the language" of the definition "is susceptible of differing constructions," it must "be construed most favorably to the accused." § 775.021(1), Fla. Stat. The State contends that the definition of "antique firearm" cannot apply to a "replica" firearm if a scope has been attached. The State argues that the attachment of a scope to a firearm means that the firearm cannot be considered a replica within the terms of the statutory definition because such a firearm with attached scope cannot be considered a copy exact in all details. This construction of the statute cannot be sustained under the rule of lenity.

The definition of an "antique firearm" says nothing about the attachment of accessories such as the scope at issue here. See § 790.001(1), Fla. Stat. Under the

definition, the relevant critical factor here is the utilization of an "early type of ignition system." See id. The attachment of a scope has no bearing on this critical factor. The State's narrow reading of "replica" produces a line of reasoning leading to anomalous and far-reaching results. An antique replica with an "early type of ignition system" and with a scope attached would fall outside the definition of an "antique firearm" while an actual antique with the same type of ignition system and with an attached scope would fall within the definition. And an antique replica with any modern accessory attached, such as camouflage tape, a rubber recoil pad, or a nylon rifle sling, would—unlike a similarly configured actual antique—fall outside the definition of an "antique firearm" whether the accessory is permanently secured or temporarily affixed.

Contrary to the State's reasoning, the strict construction required by the rule of lenity dictates that the status of the firearm as a "replica" be considered without regard to accessories—such as the scope at issue here—that are not specifically addressed by the statutory definition. The proper application of the rule of lenity precludes a construction of the definition that implicitly excludes a weapon simply because a scope has been attached when that weapon would otherwise be considered an "antique firearm." Although the narrow understanding of "replica" advocated by the State might be plausible, it is also reasonable to refer to the

weapon possessed by Weeks as a "replica" with an attached scope. Weeks thus is entitled to the benefit of the statutory exception.

LABARGA, C.J., and POLSTON, J., concur.

LEWIS, J., dissenting.

I disagree with the conclusion of the majority of the Court regarding whether the firearm at issue was a replica of an antique firearm. Although the firearm may have relied upon an ignition mechanism used by similar firearms before 1918, it also featured a scope that was not found on weapons that were available in 1918. In my view, such a firearm cannot constitute an antique firearm as defined by Florida law. Therefore, I respectfully dissent.

Although the type of firing system is certainly relevant to the determination of whether a given firearm is an antique firearm as defined by sections 790.23 and 790.001(1), Florida Statutes, I do not believe it is dispositive. Rather, I would conclude that the common understanding of the term "replica" governs whether the firearm possessed by Mr. Weeks qualifies as a replica of an antique firearm as defined by Florida law. Contrary to the statement of the First District below, which is cited by the majority opinion, see majority opinion at 12 (citing Weeks v. State, 146 So. 3d 81, 84 (Fla. 1st DCA 2014)), Black's Law Dictionary defines "replica" as "[a] reasonably exact duplicate that, when viewed, causes people to see substantially the same object as the original; a good copy, [especially] of an

- 20 -

artifact, building, or work of art." Replica, <u>Black's Law Dictionary</u> (10th ed. 2014). A nonlegal dictionary defines "replica" as "an exact copy in all details." Replica, <u>Merriam-Webster's Collegiate Dictionary</u> (10th ed. 1996).[5] Thus, even absent a legislative definition of "replica" in section 790.23, plain language and common sense dictate that a replica should, at the very least, <u>look</u> like the original object. I would conclude that the addition of a modern scope to an otherwise-antique firearm removes this firearm from the exception provided for antique firearms by the Legislature. Therefore, I would quash the decision below and reinstate Weeks's conviction.

QUINCE, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

     First District - Case No. 1D12-3333

     (Santa Rosa County)

Pamela Jo Bondi, Attorney General, Trisha Meggs Pate, Bureau Chief, and Angela Renee Hensel, Assistant Attorney General, Tallahassee, Florida,

     for Petitioner

Nancy Ann Daniels, Public Defender, Richard Michael Summa (former) Assistant Public Defender, and Megan Lynne Long, Assistant Public Defender, Second

---

     5. Both Black's Law Dictionary and Merriam-Webster's Collegiate Dictionary offer alternative definitions of "replica" that specifically pertain to works of art. <u>See</u> Replica, <u>Black's Law Dictionary</u> (10th ed. 2014); Replica, <u>Merriam-Webster's Collegiate Dictionary</u> 992 (10th ed. 1996).

Judicial Circuit, Tallahassee, Florida,

for Respondent