DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

CLINTON PARKER JOHNSTON,

Appellant,

v.

SHERI JEANETTE JOHNSTON,

Appellee.

Nos. 2D2021-1457, 2D2022-1986
CONSOLIDATED
_____

July 10, 2024

Appeals from the Circuit Court for Hillsborough County; Alissa Ellison, Judge.

Ralph P. Mangione of Burr & Forman, LLP, Tampa, for Appellant.

Eric R. Maier of Older Lundy Koch & Martino, Tampa, for Appellee.

LaROSE, Judge.

In this consolidated appeal, Clinton Parker Johnston (Former Husband) challenges the amended final judgment and award of temporary attorney's fees to Sheri Jeanette Johnston (Former Wife).

We have jurisdiction over case number 2D21-1457. Fla. R. App. P. 9.020(h), 9.030(b)(1)(A). As for case number 2D22-1986, the appeal of the order on Former Wife's motion for temporary support is untimely. *See* Fla. R. App. P. 9.030(b)(1)(B), 9.130(a)(3)(C)(iii), (b). Former Husband raised no issues about this order in his briefs. The remainder of case number 2D22-1986 is duplicative to case number 2D21-1457. Therefore, we dismiss case number 2D22-1986. We affirm the orders

appealed in case number 2D21-1457.  We write only to address Former Husband's desired nonmarital-asset carveout in the equitable distribution of the parties' Estrella and Hatcher Road Properties.

**Relevant Facts**

The parties married in 2015.  During the marriage, they purchased the Estrella and Hatcher Road Properties.  These properties are jointly titled.

After four years of marriage, Former Husband filed for divorce.  He asked the trial court to distribute the parties' assets and liabilities according to their Prenuptial Agreement.

Paragraph 15.4 of the Prenuptial Agreement limited "the marital estate available for equitable distribution . . . to (b) property acquired by the Parties during the marriage that is clearly and directly traceable to [income defined as marital property by this Agreement], and (c) any other marital property expressly provided for by this Agreement."  Paragraph 5.1 describes the Former Husband's separate property as:

> (e) the [Bayshore] residence . . . and any future residence purchased with the proceeds from the sale of such property and any other real property purchased with [Former] Husband's separate property or in [Former] Husband's sole name . . . , along with any equity in same (*provided that (1) all pieces of real property jointly owned at the time a petition for dissolution for marriage or similar action is filed, unless separately titled, shall constitute marital property subject to equitable distribution* and (2) in the event it is [Former] Husband's intention to keep a property separate but law requires [Former] Wife's name be added to same, the parties shall both execute a written document evidencing their clear intent)[.]
>
> . . . .
>
> (h) any replacements of separate property;
>
> (i) any property exchanged for separate property; [and]

2

(j) any property purchased with separate funds or with proceeds from the sale of separate property; . . . .

(Emphasis added.) Paragraph 5.2 states that "[s]eparate property is synonymous with non[]marital property."

After an evidentiary hearing, the trial court entered a final judgment. The trial court recognized that Former Husband used $91,240.13 and $96,000.00 from his separate, nonmarital funds to buy the Estrella and Hatcher Road Properties, respectively. The trial court also found that Former Husband was "entitled to the portion of his separate property used to purchase the" properties. The trial court explained that although the parties jointly owned the properties, the $91,240.13 and $96,000.00 were "clearly and directly traceable" to Former Husband's separate property and were "thus his separate, non[]marital property under paragraphs 5.1(h), (i) and (j)." The trial court further reasoned that Former Husband's separate portion of the jointly owned property did not constitute marital property subject to equitable distribution under paragraph 5.1(e) as the paragraph included the term "equity" "when referring to separate property" and omitted the same term "when referring to real property jointly owned."

Both parties moved for rehearing. Adjusting course, the trial court granted each motion, in part. For the Estrella and Hatcher Road Properties, the trial court found:

> [A]lthough a portion of the Estrella and [Hatcher Road] properties were purchased with the Former Husband's separate property, *they were jointly titled and, accordingly, paragraph 5.1(e)(1) of the Prenuptial Agreement controls over other provisions in the Prenuptial Agreement regarding property acquired with a party's separate assets.* Accordingly, each party is entitled to 50% of the net proceeds derived from the sale of the Estrella Property and [Hatcher Road] Properties, without any reimbursement to Former Husband for any non[]marital funds that he contributed to the

3

acquisition of these properties.  Nor is there any evidence that the Former Husband did not intend to make a gift of these properties to the Former Wife.  Accordingly, the Court will enter an Amended Final Judgment to reflect this correction and to adjust the equitable distribution schedule accordingly.

(Emphasis added.)  The trial court entered an amended final judgment.

## **Discussion**

Former Husband argues that the trial court erred by failing to credit him for the separate, nonmarital monies that he used to buy the Estrella and Hatcher Road Properties.[1]  Former Wife contends that Former Husband was not entitled to such carveouts for jointly titled marital properties.

We review the trial court's interpretation of the Prenuptial Agreement, a contract, de novo.  *See Famiglio v. Famiglio*, 279 So. 3d 736, 739 (Fla. 2d DCA 2019).  Its plain language controls where the contract is clear and unambiguous.  *Hahamovitch v. Hahamovitch*, 174

---

[1] Former Husband generally states that "the trial court abuse[d] its discretion in failing to award [Former] Husband a credit representing the amount of his separate, non[]marital monies that he contributed to the acquisition of the Estrella and [Hatcher Road] Propert[ies] . . . ."  But his argument focuses on the trial court's *interpretation* of the Prenuptial Agreement, not the trial court's *discretion* in distributing the properties.  Former Husband also states that the de novo review for interpreting a contract is the "applicable" standard for this issue on appeal.

Thus, we need not determine whether the trial court acted within its discretion in distributing the properties.  *See Lynn v. City of Fort Lauderdale*, 81 So. 2d 511, 513 (Fla. 1955) ("It is elementary that when a decree of the trial court is brought here on appeal the duty rests upon the appealing party to make error clearly appear.  An appellant does not discharge this duty by merely posing a question with an accompanying assertion that it was improperly answered in the court below and then dumping the matter into the lap of the appellate court for decision.  Under such circumstances it must be held, as we now hold here, that we are under no duty to answer the question." (citing *F E C News Co. v. Pearce*, 58 So. 2d 843 (Fla. 1952))).

So. 3d 983, 986 (Fla. 2015). "[T]he language itself is the best evidence of the parties' intent." *Id.* (quoting *Crawford v. Barker*, 64 So. 3d 1246, 1255 (Fla. 2011)).

The Prenuptial Agreement limited the marital estate to property obtained "during the marriage that is clearly and directly traceable to [income defined as marital property by this Agreement]" and "any other marital property expressly provided for by this Agreement." Paragraph 5.1(e) is clear, though: "[A]ll pieces of real property jointly owned at the time a petition for dissolution for marriage or similar action is filed, unless separately titled, shall constitute marital property subject to equitable distribution." If Former Husband intended "to keep a property separate but law requires [Former] Wife's name be added to same, the parties shall both execute a written document evidencing their clear intent." The Estrella and Hatcher Road Properties were jointly owned and titled when the Former Husband sued for divorce. The parties did not execute a document reflecting Former Husband's intent to keep his contributions separate.

Former Husband claims that even if the Estrella and Hatcher Road Properties were marital properties, paragraphs 5.1(h), (i), and (j) protected his contributions of separate funds from equitable distribution. Noteworthily, paragraph (j) provides that Former Husband's separate property includes "any property purchased with separate funds." But paragraph 5.1(e) establishes that jointly owned real property is marital property subject to equitable distribution. Former Husband's construction of paragraphs 5.1(h), (i), and (j) would leave paragraph 5.1(e) a nullity. We reject an interpretation that gives a contractual provision no effect. *See Williams-Paris v. Joseph*, 329 So. 3d 775, 783 (Fla. 4th DCA 2021).

Additionally, paragraph 5.1(e) specifies *real* property, where paragraphs 5.1(h), (i), and (j) refer to property in general. *See generally id.* ("[W]hen certain provisions of a contract appear to conflict, 'it is a general principle of contract interpretation that a specific provision dealing with a particular subject will control over a different provision dealing only generally with that same subject.' " (quoting *Idearc Media Corp. v. M.R. Friedman & G.A. Friedman, P.A.*, 985 So. 2d 1159, 1161 (Fla. 3d DCA 2008))). Despite his best attempt, the Prenuptial Agreement does not give Former Husband a special equity in his nonmartial contributions to buy the marital properties.

We decline Former Husband's invitation to apply the ejusdem generis rule of construction. The contractual language is clear and unambiguous. Thus, the rule is inapplicable. *See Fla. Farm Bureau Gen. Ins. Co. v. Worrell*, 359 So. 3d 890, 893 n.2 (Fla. 5th DCA 2023) (explaining that ejusdem generis "provides that we construe an ambiguous general term in legal text by considering the specific things that follow and those things of the same kind, class or nature as the specific things identified" and that ejusdem generis applies "only when contractual language is ambiguous and must be construed by the court"); *see also State v. Weeks*, 202 So. 3d 1, 8 (Fla. 2016) (explaining that ejusdem generis is a rule of construction that "states that when a general phrase follows a list of specifics, the general phrase will be interpreted to include only items of the same type as those listed" (quoting *State v. Hearns*, 961 So. 2d 211, 219 (Fla. 2007))).

## Conclusion

We dismiss case number 2D22-1986 for lack of jurisdiction and because it is duplicative of case number 2D21-1457. We affirm the trial court's amended final judgment and order awarding Former Wife temporary attorney's fees.

Case number 2D22-1986 is dismissed; orders affirmed.

VILLANTI and SMITH, JJ., Concur.

_____

Opinion subject to revision prior to official publication.