# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2023-2294
LT Case No. 2012-CF-681

_____

RYAN LEE SCHEURMAN,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

3.800 Appeal from the Circuit Court for Clay County.
Steven B. Whittington, Judge.

Ryan Lee Scheurman, Live Oak, pro se.

John M. Guard, Acting Attorney General, and Damaris E. Reynolds, Assistant Attorney General, Tallahassee, for Appellee.

February 11, 2025

PER CURIAM.

Ryan Lee Scheurman ("Appellant") appeals the circuit court's denial of his motion for return of property. The motion sought the return of his black powder muzzleloader rifle, which law enforcement had seized from him during a search of his home for probation violations. We vacate and remand for further proceedings.

## I.

Appellant pleaded guilty to various crimes, was adjudicated guilty, and was sentenced to seven years in prison and eight years of sex offender probation. His probation was later modified to regular probation. One of the conditions of his probation stated that he must not "possess, carry or own any firearm," and he must not "possess, carry or own any weapons without first procuring the consent of" his probation officer. Another condition stated that Appellant must comply with all instructions that his probation officer may give to him.

Appellant's probation officer filed an affidavit on January 5, 2023, charging him with violations of both probation conditions. In the affidavit, the officer stated that she and Appellant had argued back and forth over whether he was permitted to possess a black powder muzzleloader rifle, and she had informed him that he would be charged with violating his probation were a muzzleloader found in his home or vehicle. She further stated that on December 21, 2023, she discovered a muzzleloader during a search of Appellant's home, and Appellant indicated that he used the muzzleloader for hunting. The next day, the probation officer returned with law enforcement personnel, who searched the residence and confiscated the muzzleloader, a bow and arrows, two machetes, two swords, nunchucks, and two octagonal sai daggers.

On March 6, 2023, Appellant entered an admission of probation violations as to the bow, swords, machetes, and daggers, but not as to the muzzleloader, contending that his probation order did not prohibit him from possessing it. Three weeks later, he filed a motion for return of property, which the circuit court denied in an order that also partially granted his motion to modify his probation. This appeal followed. We have jurisdiction. *See* Fla. R. App. P. 9.140(b)(1)(D).

## II.

"Trial courts possess the inherent authority to rule on motions seeking the return of property seized by law enforcement in connection with a criminal investigation once the trial court takes jurisdiction over the criminal proceedings arising from the

investigation." *Clinton v. State*, 108 So. 3d 1134, 1136 (Fla. 5th DCA 2013). The exercise of that inherent authority occurs within the following procedure. "First, the defendant must file a facially sufficient motion for the return of property." *Bolden v. State*, 875 So. 2d 780, 782 (Fla. 2d DCA 2004). "To be facially sufficient, the motion must allege that 'the property at issue was [the defendant's] personal property, was not the fruit of criminal activity, and was not being held as evidence.'" *Id.* (quoting *Durain v. State*, 765 So. 2d 880, 880 (Fla. 2d DCA 2000)). Once the defendant files a facially sufficient motion, the trial court must give the State an opportunity to respond. *Clinton*, 108 So. 3d at 1136. "If the State can show that the property was entered into evidence, that it intends to pursue forfeiture against the property, or that it intends in good faith to bring another criminal prosecution at which the items would be admissible in evidence, then the defendant is not entitled to have the property returned." *Id.* "However, if the State is 'unable to connect the items to specific criminal activity, and no one else can be identified who can demonstrate a superior possessory interest in the property, it should be returned to [the defendant] or to such person(s) as he may designate.'" *Id.* (quoting *Stone v. State*, 630 So. 2d 660, 661 (Fla. 2d DCA 1994)).

## III.

The State contends that Appellant's muzzleloader is being held as evidence that he violated his probation. Appellant argues, on the other hand, that his keeping of a muzzleloader did not violate his probation, and thus the State cannot connect it to any criminal activity.[1]

---

[1] At the outset, we note that a direct appeal from the violation of probation ("VOP") provides an appropriate forum—and, perhaps, the only appropriate forum—for an attack on the legal sufficiency of the VOP. However, we do not understand Appellant to have leveled such an attack. Indeed, the court below cannot have made Appellant's possession of the muzzleloader a basis for his VOP, as the VOP was based on Appellant's admission, and Appellant refused to admit that his possession of the muzzleloader violated his probation. As to the muzzleloader, then, Appellant has

3

We begin by interpreting the words "firearm" and "weapon[ ]" in the order that set forth the conditions of Appellant's probation. The prohibition on firearms and weapons for probationers is a standard condition of probation authorized by section 948.03(1)(m), Florida Statutes (2023). Chapter 948 does not contain any definition of "firearm" and "weapon," but Chapter 790 defines both terms. *See id.* § 790.001(9), (20), Fla. Stat. (2023). Because we presume that statutes dealing with similar subjects accord the same meaning to a word, absent some indication to the contrary, we accord the same meanings to "firearm" and "weapon" in section 948.03 as are given those words in section 790.001. *See Messineo v. State*, 174 So. 3d 1106, 1108 (Fla. 5th DCA 2015) ("When the conditions of probation do not define 'weapon,' as is the situation here, the definition of 'weapon' from section 790.001(13), Florida Statutes, applies.").

Section 790.001 defines "firearm," in part, as "any weapon . . . which will, is designed to, or may readily be converted to expel a projectile by the action of an explosive," but it goes on to state that "[t]he term 'firearm' does not include an antique firearm unless the antique firearm is used in the commission of a crime." *Id.* § 790.001(9). Its definition of "antique firearm," in turn, includes "any firearm manufactured in or before 1918 (including any matchlock, flintlock, percussion cap, or similar early type of ignition system) or replica thereof, whether actually manufactured before or after the year 1918." *Id.* § 790.001(2).

Appellant's black powder muzzleloader rifle qualifies as an "antique firearm" because it employs an "early type of ignition system" similar to a "matchlock, flintlock, [or] percussion cap." *Id.* § 790.001(2); *see State v. Weeks*, 202 So. 3d 1, 9–10 (Fla. 2016) (applying rule of lenity to hold that a black powder muzzleloader rifle with percussion cap ignition system is an antique firearm because of its early type ignition system, even if it has a modern

no VOP to appeal. Nothing in our opinion should be construed to hold that a defendant may use an appeal from the denial of a motion for return of property to test the validity of his VOP. Such an argument is not presented here, and we do not address it.

4

scope affixed to it, and even if it is otherwise not "an exact copy [of a pre-1919 firearm] in every respect"). And because, as the State concedes, the muzzleloader was not "used in the commission of a crime," it falls outside the definition of "firearm." *See* § 790.001(9), Fla. Stat.

Appellant's black powder muzzleloader could nonetheless be evidence of a probation violation if it constitutes a "weapon." Section 790.001 defines "weapon" as "any dirk, knife, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife, plastic knife, or blunt-bladed table knife." § 790.001(20). The question thus becomes: is a black powder muzzleloader rifle a "deadly weapon" as section 790.001 uses the term?

While the statute does not define "deadly weapon," our precedent does. In *Brown v. State*, 896 So. 2d 808, 809 (Fla. 5th DCA 2005), we reversed a conviction for armed burglary that involved an antique firearm. The appellant argued that "the rifle did not meet the definition of a 'deadly weapon' because he did not use it as a weapon during the commission of the burglary." *Id.* Instead, "he found the antique rifle during his burglary of an unoccupied dwelling and stole it." *Id.* at 810. As charged, the State was required to prove that there was a "use of a weapon or firearm," *id.* (quoting § 775.087(1), Fla. Stat. (2002)), which meant that the State had to prove the antique rifle was either a "weapon" or a "firearm," *see id.* at 811.

Our court concluded that the State had not proven its case. We observed that section 790.001 exempts an "antique firearm" from the definition of "firearm" unless it "is used in the commission of a crime," and it defines a "weapon" as "any dirk, metallic nickels, sling shot, billie, tear gas gun, chemical weapon or devise, or other deadly weapon except a firearm or a common pocket knife." *Id.* (quoting § 790.001(6), (13), Fla. Stat. (2002)). We held that the rifle was an antique firearm that was not used in the commission of a crime. *Id.* And, most critical for present purposes, we held that the rifle did not "constitute a deadly weapon because it was not used or threatened to be used in a way likely to produce death or great bodily harm." *Id.*

5

In short, under *Brown*, an item does not constitute a "deadly weapon" unless it is "used or threatened to be used in a way likely to produce death or great bodily harm." *Id*. Here, the State did not allege or prove that Appellant used or threatened to use his muzzleloader in such a manner. Rather, it is uncontested that the muzzleloader was discovered encased in a residential closet. Therefore, under *Brown*, we must conclude that Appellant's muzzleloader was not a "deadly weapon."

For the foregoing reasons, Appellant's keeping of a muzzleloader in his home did not violate the condition of his probation relating to firearms and weapons. Nonetheless, in what it describes as its "bottom line" argument, the State argues that the muzzleloader was prohibited under the separate probation condition that Appellant comply with all instructions that his probation officer gives to him. However, we previously have rejected this exact argument. As we have held, a probation officer's instructions cannot redefine the term "weapon." *See Messineo*, 174 So. 3d at 1108 ("[T]he fact that [a]ppellant's probation officer told her that she could not possess any knives did not redefine or expand the definition of 'weapon' in Condition 4 and was not evidence that [a]ppellant willfully violated her probation by carrying this pocketknife."). And as we further have held, it makes no difference that the probation officer may have intended for her instructions to render a more expansive meaning of "weapon," for she "has no authority to impose additional conditions of probation, even if the court has ordered the probationer to follow all instructions the officer may give." *Id*. (quoting *Bishop v. State*, 21 So. 3d 830, 832 (Fla. 1st DCA 2008)).

Even so, Appellant is not yet entitled to the return of his muzzleloader, as the record is underdeveloped in two respects. On remand, the State should be given an opportunity to establish whether it "intends to pursue forfeiture against" the muzzleloader or whether it "intends in good faith to bring another criminal prosecution at which [the muzzleloader] would be admissible in

evidence."[2] *Clinton*, 108 So. 3d at 1136; *see also Kern v. State*, 706 So. 2d 1366, 1370 (Fla. 5th DCA 1998) (allowing State to retain property should it "make a showing that it intends in good faith to bring another criminal prosecution for which the property is admissible"). If the State lacks either intention, then Appellant is entitled to the return of his muzzleloader.

## IV.

For the foregoing reasons, we vacate the circuit court's denial of Appellant's motion for return of property, and we remand for further proceedings.

VACATED and REMANDED for further proceedings.

---

[2] In passing, the State observes that Appellant's muzzleloader could be used to commit a crime. However, nothing in the record yet suggests that the State is holding the muzzleloader as evidence of any crime other than the alleged probation violations that we analyze here. Nothing in our opinion should be taken to cast doubt on the State's authority to hold Appellant's muzzleloader as evidence should the State, in good faith, intend to charge Appellant for using or intending to use it in the commission of a crime.

In addition, the State contends in its brief that Appellant "is not entitled to have the [muzzleloader] returned to him because it would result in another VOP charge against him for failing to follow his probation officer's instructions." As we explain in this opinion, the State's view of the law does not withstand our precedent. In light of our opinion and the precedent on which it relies, we cannot assume that the State will bring another VOP charge if Appellant's muzzleloader is returned to him. However, we acknowledge that the State is entitled to advocate in good faith for a change in our precedent, whether in further proceedings in this appeal, *see, e.g.*, Fla. R. App. P. 9.331, or in some future VOP proceeding brought as a good-faith vehicle to test our precedent, *see* R. Regulating Fla. Bar 4-3.1. The State may clarify on remand whether it intends to bring another VOP charge against Appellant for that latter purpose.

BOATWRIGHT, MACIVER, and PRATT, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____