QUINCE, J.
We have for review Paul v. State, 59 So.3d 193 (Fla. 4th DCA 2011), wherein the Fourth District certified conflict with the First District’s decision in Crapps v. State, 968 So.2d 627 (Fla. 1st DCA 2007). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. The certified conflict involves an issue of statutory construction: whether shooting into an occupied vehicle under section 790.19, Florida Statutes (2001), qualifies for prison releas-ee reoffender (PRR) sentencing under the forcible felony catch-all provision of the PRR statute, section 775.082(9)(a)l.o, Florida Statutes (2001). We approve the Fourth District’s decision below because we find that the offense of shooting into an occupied vehicle necessarily involves the use or threat of physical force or violence against an individual, and therefore, qualifies as a forcible felony under the catch-all provision of the PRR Statute. We disapprove the opinion in the conflicting case of Crapps.

Paul

Charles Paul was convicted under section 790.19, Florida Statutes (2001), for shooting into an occupied vehicle. Paul, 59 So.3d at 194. Persons convicted under section 790.19 may be subjected to penalties under section 775.082(9)(a), Florida Statutes (2001), the “prison releasee reof-fender” (PRR) statute, which specifies that a defendant who commits “[a]ny felony that involves the use or threat of physical force or violence against an individual” (i.e., the catchall provision) within three years of being released from a state correctional facility is a PRR who is not eligible for sentencing under the sentencing guidelines and must be sentenced to the *1060 mandatory minimum sentences specified in section 775.082(9)(a)3. In Paul’s case, the trial court determined that he qualified as a PRR under the catchall provision and thus sentenced him to a prison term of fifteen years for the second-degree felony of shooting into an occupied vehicle. See § 775.082(9)(a)3.c., Fla. Stat. (2001) (providing that upon proof that a defendant is a prison release reoffender as defined in the statute, the defendant must be sentenced “[f]or a felony of the second degree, by a term of imprisonment of 15 years”).
After receiving an enhanced sentence under the violent felony catch-all provision of the PRR statute, Paul filed a postcon-viction motion under Florida Rule of Criminal Procedure 3.850 in the trial court, disputing the validity of his sentence. The trial court denied the motion as untimely and successive. On appeal to the Fourth District Court of Appeal, Paul disputed his enhanced sentence, claiming that his conviction was not a qualifying felony under the forcible felony catch-all provision of the PRR statute. Paul, 59 So.3d at 194.
The Fourth District affirmed the trial court order by summarily denying Paul’s rule 3.850 claim. Id. The court also found that even if the claim had been raised in a motion under Florida Rule of Criminal Procedure 3.800(a), it lacked merit and had already been rejected on direct appeal. Id. The Fourth District concluded that “this offense necessarily includes the use of force or violence against an individual. To commit a violation of section 790.19, a vehicle must be occupied.” Id. The Fourth District noted that, as required by this Court’s decision in State v. Hearns, 961 So.2d 211 (Fla.2007), when a court is determining whether a particular offense constitutes a “forcible felony” the court may only consider the statutory elements of the offense, and not the particular circumstances of the case. Id. The Fourth District went on to clarify that “although a court may not look to the facts of the case in deciding whether the use of force is involved, a court is not required to ignore the elements of the particular provision of the statute under which appellant is charged.” Id.
The Fourth District distinguished Paul’s case from previous cases which involved shooting into a building, reasoning that under section 790.19 a building may be occupied or unoccupied and a conviction under that provision of the statute does not necessarily require the use of force against an individual. Id. The Fourth District recognized and certified direct conflict with the decision of the First District in Crapps, on the issue of whether the offense of shooting into an occupied vehicle under section 790.19, Florida Statutes, necessarily includes the use or threat of force against an individual. Id.

Crapps

Alander Crapps was convicted of throwing a deadly missile into an occupied vehicle under section 790.19, Florida Statutes (2005), which contained the same language as the 2001 version of the statute at issue in Paul. Crapps, 968 So.2d at 627. Crapps appealed his conviction to the First District Court of Appeal, and argued that his conviction was not a qualifying offense to classify him as a PRR, under section section 775.082(9)(a)l.o, Florida Statutes (2005) — the same argument that Paul made to the Fourth District. Id.; Paul, 59 So.3d at 194. The First District agreed with Crapps that throwing a deadly missile into an occupied vehicle was not a qualifying offense for him to be classified as a PRR under the catch-all forcible felony provision. Crapps, 968 So.2d at 628.
The First District did not state its rationale for this conclusion. However, its parenthetical explanations of the cited cases offer some insight. The parenthetical ex *1061 planation of Hudson v. State, 800 So.2d 627, 628-29 (Fla. 3d DCA 2001) states that the Third District held “that the crime proscribed by section 790.19 is not a forcible felony because it includes shooting or throwing at unoccupied buildings and, thus, does not, by statutory definition, necessarily involve physical force or violence against an individual!)]” Crapps, 968 So.2d at 628 (emphasis added). The First District’s parenthetical explanation of State v. Hearns, 961 So.2d 211, 216 (Fla.2007), states that this Court reiterated “that the only relevant consideration in determining whether an offense constitutes a forcible felony is the statutory elements of the offense and that if ‘ “the use or threat of physical force or violence against any individual” ’ is not a necessary element of the offense, then the offense is not a forcible felony[.]” Id. The First District’s parenthetical explanation of Peterson Paul v. State,[1] 958 So.2d 1135, 1136 (Fla. 4th DCA 2007), acknowledges the Fourth District’s holding that the defendant “who was convicted of shooting a deadly missile into a dwelling, did not qualify as a PRR[.]” Id.
Based on the parenthetical explanations, we can conclude that the First District applied the Hearns statutory elements test to Crapps’ offense of throwing a deadly missile into an occupied vehicle. Further, the First District implied that this offense did not qualify as a forcible felony under the Hearns test because force against an individual is not a necessary element of at least one portion of the statute.
ANALYSIS
The certified conflict issue before this Court is whether, as a matter of law, shooting into an occupied vehicle under section 790.19, Florida Statutes (2001), qualified for enhanced sentencing under the forcible felony catch-all provision of the PRR statute, i.e. section 775.082(9)(a)l.o, Florida Statutes (2001). This issue involves a question of statutory interpretation and thus is subject to de novo review. See State v. Burris, 875 So.2d 408, 410 (Fla.2004) (“This question of statutory interpretation is subject to de novo review.”).
In Hearns, this Court determined that only the statutory elements of an offense are to be considered in determining whether an offense qualifies as a forcible felony, regardless of the particular circumstances involved. 961 So.2d at 212. In order for this Court to apply the Hearns analysis, we must first determine the statutory elements of section 790.19.
Section 790.19, Florida Statutes (2001) reads:
Shooting into or throwing deadly missiles into dwellings, public or private buildings, occupied or not occupied; vessels, aircraft, buses, railroad cars, streetcars, or other vehicles.— Whoever, wantonly or maliciously, shoots at, within, or into, or throws any missile or hurls or projects a stone or other hard substance which would produce death or great bodily harm, at, within, or in any public or private building, occupied or unoccupied, or public or private bus or any train, locomotive, railway car, caboose, cable railway car, street railway car, monorail car, or vehicle of any kind which is being used or occupied by any person, or any boat, vessel, ship, or barge lying in or plying the waters of this state, or aircraft flying through the airspace of this state shall *1062 be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.088, or s. 775.084.
At first glance, section 790.19 appears to be a conjunctive statute, where all elements merge to form one offense, because all offenses are listed in a single paragraph without the use of punctuation or subsections to indicate the legislative intent. If the statute were conjunctive in nature, then a violation of section 790.19 would never be considered a forcible felony, as a cursory reading of the statute may demonstrate circumstances where a physical threat of force to an individual would not be necessarily involved, such as shooting into an unoccupied building or shooting a vessel lying in the water. Although the entire statute is a single sentence, it punishes the shooting or throwing of deadly missiles at, within, or into four separate types of property, each including a modifier that specifies the particular instances where a defendant would be in violation of this section. These properties include: (1) public or private buildings, whether occupied or unoccupied; (2) public or private vehicles of any kind which are being used or occupied by any person; (3) watercraft which are lying in or plying the waters of this state; and (4) aircraft flying through the airspace of this state. The statute is written in a manner that proscribes distinct offenses, with the only connection being that the defendant wantonly and maliciously discharges an object in order to complete the offense. The fact that the statute uses two opposing modifiers, “occupied or unoccupied,” after referencing buildings protected by this statute, and more synonymous modifiers, “being used or occupied by any person,” after listing the vehicles protected under this statute, indicates that the statute is a disjunctive statute, which punishes multiple offenses, each with distinct elements.
In State v. Reddick, 568 So.2d 902, 903, n. 2 (Fla.1990), this Court cited the Florida Standard Jury Instructions in Criminal Cases in stating that, pursuant to section 790.19, Florida Statutes (1985), the offense of “[sjhooting into a dwelling ... has three elements: (1) the defendant shot a firearm, (2) into a public or private building, (3) wantonly or maliciously.” This Court subsequently interpreted section 790.19 as one which includes multiple offenses, each containing distinct elements, in the case of Valdes v. State, 3 So.3d 1067 (Fla.2009). In Valdes, the defendant was convicted of shooting into an occupied vehicle, in violation of section 790.19. Id. at 1068. In upholding the defendant’s conviction, we noted that pursuant to section 790.19 a conviction for shooting into an occupied vehicle “requires proof of the following three elements: (1) the defendant shot a firearm; (2) he or she did so at, within, or into a vehicle of any kind that was being used or occupied by any person; and (3) he or she did so wantonly or maliciously.” Id. at 1071. Therefore, we have previously concluded that section 790.19 is comprised of distinct and separate offenses, with each offense containing unique elements which must be proven in order to secure a conviction of that particular offense.
Paul argues that even if section 790.19 proscribes a number of separate offenses, the “used or occupied” modifiers for vehicles are alternative definitions much like the “occupied or unoccupied” modifiers for buildings. He contends that the offense of shooting or throwing a deadly missile into a vehicle does not necessarily involve physical force or violence against an individual because a vehicle can be “used” without a person occupying the vehicle. In support of this argument, Paul cites the Webster Dictionary’s definition of “use,” as “the privilege or benefit of using something.” See Webster’s Ninth New Collegiate Dictionary 1299 (9th ed. 1983). Paul offers *1063 the example of a car being used to block a road or being driven to the store but left in the parking lot while the driver shops. However, a closer reading of the statutory-language combined with the legislative history of the statute and this Court’s previous interpretations of the statute indicate otherwise.
Legislative History of Section 790.19
This statutory section dates back to 1881, when the “Senate and Assembly” passed an act “for the better Protection of Passengers on Railroad Cars and the Employees of Railroad Companies.” Ch. 3281, Fla. Laws (1881). Section 1 of this statute prohibited throwing missiles at or into locomotives or other railroad cars occupied by passengers or railroad employees. Section 2 prohibited throwing deadly missiles or shooting into a locomotive or railroad car belonging to or being used by a railroad company. The Revised Statutes of the State of Florida, published in 1892, included two provisions related to throwing missiles at a railroad car. Section 2696 prohibited throwing deadly missiles or shooting at locomotives and other railroad cars belonging to or being used by a railroad company. Section 2697 prohibited the throwing of any missiles at a locomotive or railroad car “while the same are occupied by passengers or employees.” § 2697, Fla.Rev.Stat. (1892).
In 1901, the Legislature added dwelling houses, occupied houses, and steamboats to the spaces to be protected from missiles and shooting. Chapter 4987 made it unlawful to shoot a firearm at or into a dwelling house or steamboat “plying the waters of this State.” Ch. 4987, §§ 1, 2, Laws of Fla. (1901). A second act prohibited shooting a deadly missile “at or into any dwelling or any other house which is being used or occupied” or “any railroad car, street car or vehicle of any kind which is being used or occupied by any person or persons.” Ch. 4988, §§ 1, 2, Laws of Fla. (1901). In 1906, chapter 3281 of the 1881 Act and chapters 4987 and 4988 of the 1901 Acts were consolidated into a single one-paragraph statute that prohibited shooting or throwing deadly missiles into “any dwelling or any other house which is being used or occupied,” or a “vehicle of any kind which is being used or occupied by any person or persons,” or “any steamboat lying in or plying the [state] waters.” § 3628, Fla. GemStat. (1906).
The statute essentially remained the same until 1959, when it was amended to include “any public or private building, occupied or unoccupied” and added vessels, aircraft, buses, ships and barges to the list of vehicles that were protected. Ch. 59-458, § 1, Laws of Fla. While the 1959 amendment changed the building modifiers from “used or occupied” to “occupied or unoccupied,” the vehicle modifiers of “used or occupied” have remained unchanged since the 1906 version of the statute. The list of vehicles was amended again in 1974 to include “train, locomotive, railway car, caboose, cable railway car, street railway car, monorail car.” Ch. 74-67, § 1, Laws of Fla. The 1974 amendment also inserted “or hurls or projects a stone or other hard substance” to the actions prohibited. Id. The statute has remained unchanged since then and has been a single paragraph since its consolidation in 1906.
We can glean several things from this history of section 790.19. First, the consolidated statute originally only applied to occupied buildings, as evidenced by the 1959 amendment that prohibited throwing deadly missiles into both unoccupied and occupied buildings. Second, the language “used or occupied” as originally used in the consolidated statute required the presence of a person. Because the Legislature changed this language regarding buildings, *1064 but not as to vehicles, it retains the same meaning for vehicles. Thus, the offense of throwing a deadly missile or shooting into a vehicle “which is being used or occupied by any person” necessarily involves the use of physical force or violence against an individual.
This conclusion is consistent with a case decided by this Court in 1909 that involved section 3628 of the Florida General Statutes of 1906 (the consolidated single paragraph statute). See Thomas v. State, 58 Fla. 120, 50 So. 954, 954 (1909). In Thomas, this Court concluded that an information was fatally defective because it did not allege that the railroad car that the defendant had shot into was being used or occupied by a person or persons. Id. at 122, 50 So. 954. This Court explained that “the shooting must be such as to endanger the lives or safety of those who may be in or using the car.” Id. See also Hamilton v. State, 30 Fla. 229, 11 So. 523, 524 (1892) (finding that both of the 1892 revisions to section 790.19 indicated a legislative objective to punish acts that endanger the lives of people who may be on the locomotive or in the car). Thus, this Court interpreted the terms “used or occupied” as interchangeable and found the presence of a person in the car to be an essential element of the offense of shooting or throwing a missile into a railroad car.
Where the Legislature does not define the words used in a statute, this Court first examines the plain language of the statute in order to detex-mine the parameters of a specific element of an offense. See Marrero v. State, 71 So.3d 881, 886 (Fla.2011). The Legislature did not define the word “use” in section 790.19. Therefore, it is “‘appi'opi'iate to refer to dictionary definitions when construing [section 790.19]’ in order to ascertain the plain and ordinary meaning of [‘use’].” School Bd. of Palm Beach Cnty. v. Survivors Charter Schs., Inc., 3 So.3d 1220, 1233 (Fla.2009).
Our purpose in construing a statute is to give effect to the Legislature’s intent. When a statute is clear, courts will not look behind the statute’s plain language for legislative intent or resort to rules of statutory construction to ascertain intent. Instead, the statute’s plain and ordinary meaning must control, unless this leads to an umreasonable l-esult or a result clearly contrary to legislative intent.
State v. Burris, 875 So.2d 408, 410 (Fla.2004) (citations omitted). “Words and meanings beyond the litex-al language may not be entertained nor may vagueness become a reason for broadening a penal statute.” Perkins v. State, 576 So.2d 1310, 1312 (Fla.1991); See § 775.021(4)(b), Fla. Stat. (2001). “[T]o the extent that definiteness is lacking, a statute must be con-sti'ued in the manner most favorable to the accused.” 576 So.2d at 1312. This rule of lenity is a canon of last i*esort and only applies if the statute remains ambiguous after consulting traditional canons of statutory constx-uction. See Kasischke v. State, 991 So.2d 803, 814 (Fla.2008). We find that in light of the history and our previous intei*pretations of the statute, the statute is not subject to competing reasonable interpretations and the rule of lenity does not apply.
Paul cites the definition of “use” as the “pi’ivilege or benefit of using something.” Merriam Webster’s Third New International Dictionary 2523 (3rd ed. 1981). This definition would result in the statute being broader than the Legislature intended. Under this definition, vehicles would always be in use because someone would always have the “privilege or benefit” of using them. And thus, shooting into both occupied and unoccupied vehicles would be punishable under section 790.19. Paul ar *1065 gues that since the Legislature gave the alternative of buildings being occupied or unoccupied, it follows that it also gave the same meaning to the alternative of a vehicle being used or occupied. We find this argument unpersuasive. The Legislature amended the statute in 1959 and specifically designated that buildings are protected under this statute, whether they are occupied or unoccupied at the time of the offense. The Legislature did not add this language to the portion of the statute that protects vehicles. If the Legislature intended for “used” to signify a vehicle that is unoccupied, it would seem a simpler task to use the same modifier for vehicles that was used just a few lines earlier in the designation for buildings.
In holding that the offense of shooting into a vehicle under section 790.19 necessarily involves the threat of physical force or violence to an individual, we disapprove the apparent reasoning of the First District in Crapps, 968 So.2d 627 (Fla. 1st DCA 2007). The First District cited Hudson v. State, 800 So.2d 627 (Fla. 3d DCA 2001), and Peterson Paul v. State, 958 So.2d 1185 (Fla. 4th DCA 2007), to support its holding. The case below is distinguishable from both Hudson and Peterson Paul based on the crime charged. The defendants in Hudson and Peterson Paul were both charged under the portion of the statute that criminalized shooting into a building, whether occupied or unoccupied. 800 So.2d at 628, 958 So.2d at 1136. We acknowledge that the offense of shooting into a building is not a forcible felony under the statute as the statute does not require the building to be occupied. As we have noted above, the designation “occupied or unoccupied” is a modifier defining the offense of shooting into a building. This modifier does not define the offense of shooting into a vehicle. As the Fourth District reasoned below, “[w]hen conducting the statutory elements analysis required by Hearns, although a court may not look to the facts of the case in deciding whether the use of force is involved, a court is not required to ignore the elements of the particular provision of the statute under which [the defendant] is charged.” 59 So.3d at 194. A forcible felony analysis for the crime of shooting into a building would not be useful to the offense of shooting into a vehicle as the offense of shooting into a vehicle under section 790.19 requires the presence of an individual and the offense of shooting into a building under the same statute does not. Thus, in light of our clarification of the elements for each offense listed in section 790.19, the First District’s holding in Crapps cannot stand.
In Crapps, the First District concluded that shooting into an occupied vehicle did not qualify for enhanced sentencing since the portion of the statute that outlines the elements of the charge of shooting into an occupied building does not require the threat of violence or force to an individual. 968 So.2d at 628. As we find that the offenses of shooting into a building and shooting into a vehicle are separate and distinct crimes for purposes of the Hearns statutory elements test, we find that a conviction under section 790.19 for shooting into an occupied vehicle is a basis for PRR sentencing pursuant to the forcible felony catch-all provision, as the statute necessarily involves the use or threat of physical force to an individual.
CONCLUSION
For the reasons expressed above, approve the Fourth District’s decision below. We disapprove the opinion in the conflicting case of Crapps.
It is so ordered.
*1066 PARIENTE, LEWIS, CANADY, LABARGA, and PERRY, JJ., concur.
POLSTON, C.J., concurs in result.

. The defendant in that case was Peterson Paul, a different individual than Charles Paul who is the subject of the instant case.