PARIENTE, J., dissenting.
I dissent for two reasons. First, I dissent because the majority is receding from this Court's longstanding precedent in State v. Houck , 652 So.2d 359 (Fla. 1995), regarding the definition of "weapon" for purposes of the reclassification statute when that task should be left to the Legislature. Second, I dissent because in receding from Houck , the majority does not apply a clear and consistent definition of "weapon," which, for purposes of the reclassification statute, should include an "intent" element.
Construing the term "weapon" narrowly, and in favor of the accused, I would conclude that there should be an explicit finding that the defendant intended to use the object to inflict harm before a felony can be reclassified. Failure to construe the term in this manner will lead to reclassification to a higher degree of felony in any and every situation where any object is used to inflict harm on another.
While this may not be what the majority intended, the majority's opinion inconsistently defines what constitutes a "weapon" under the reclassification statute. First, the majority states that a "weapon" includes "any object used with the intent to cause harm." Majority op. at 705. In keeping with this definition, the majority concludes that a "weapon" as that term is used in the reclassification statute is "any object used or intended to be used to inflict harm on another." Majority op. at 706. The majority then concludes by stating that if the object "is used to inflict harm on another," the felony offense is subject to reclassification and that this finding should be made by the jury. Majority op. at 706-07. However, if there is no requirement of intent, then the jury is essentially not making any additional finding than what is required for involuntary manslaughter.
It is this all-encompassing definition of "weapon" that would subject a defendant who uses any object to inflict harm on a *708 person during the commission of a felony to a higher penalty under the reclassification statute, without any factual finding that the defendant intended to use the object to inflict harm. In other words, every felony involving harm to another through the means of some object, no matter how innocuous, would be subject to reclassification regardless of the defendant's state of mind. I strongly disagree with this overly broad interpretation of the reclassification statute, which divorces the statute from the Legislature's intended purpose.
Even if I agreed with the majority that our opinion in Houck warrants reconsideration, I would utilize well-established principles of statutory construction, such as ejusdem generis , in pari materia , and the rule of lenity, in conjunction with dictionary definitions, to conclude that a finding of intent to inflict harm should be required before a felony can be reclassified. By receding from Houck and adopting an all-encompassing definition of the word "weapon," the majority today is subjecting virtually any person who uses an object-including an automobile-to harm another, whether intentionally or not, to automatic reclassification, upon conviction of a felony, and a more severe penalty than the one deemed appropriate by the Legislature under section 775.082, Florida Statutes (2018).
Indeed, in this case, without any finding by the jury that Shepard intended to use the automobile to inflict harm, Shepard's manslaughter conviction was reclassified from a second-degree felony, which carries a maximum sentence of fifteen years' imprisonment, to a first-degree felony, which carries a maximum sentence of thirty years' imprisonment. Shepard ultimately received the maximum sentence for the reclassified crime. Because Shepard's manslaughter conviction was reclassified without any finding that he intended to use the automobile to inflict harm, I would quash the decision of the First District Court of Appeal and require a retrial on the limited issue of intent.
FACTS
Shepard was charged with first-degree murder, but the jury convicted him of the lesser-included offense of manslaughter with a weapon. The verdict form did not specify between voluntary or involuntary manslaughter. As a result, we are unable to conclude whether the jury found that the victim's death was the result of a voluntary act or culpable negligence. See Pethtel v. State , 177 So.3d 631, 634 (Fla. 2d DCA 2015) (explaining that these "two categories of manslaughter differ markedly with respect to criminal intent"). The crime of manslaughter, by voluntary act or culpable negligence, is a second-degree felony, which carries a maximum sentence of fifteen years' imprisonment. § 782.07, Fla. Stat. (2018) ; see § 775.082(3)(d), Fla. Stat. (2018).
The instructions given to the jury defined "weapon" as "any object that could be used to cause death or inflict serious bodily harm." Guided by this definition, which essentially directed the verdict in this case, the jury found that Shepard used a weapon, to wit, an automobile. Accordingly, Shepard's felony was reclassified to a first-degree felony. See majority op. at 703-04. Shepard was sentenced to the maximum sentence of thirty years' imprisonment, without any finding that he intended to use the automobile to kill the victim.[3]
*709 ANALYSIS
Florida's reclassification statute enhances the degree of a felony and, consequently, the length of the potential sentence when the defendant "carries, displays, uses, threatens to use, or attempts to use any weapon or firearm" during the commission of the felony. § 775.087(1), Fla. Stat. (2011). The purpose of the statute is to discourage a defendant from using "weapons" or "firearms" in the course of a felony-not to cover the entire universe of methods in which a felony can be committed.
As the majority observes, the reclassification statute does not define "weapon." See majority op. at 704-05. Thus, the issue before the Court today is one of statutory construction.
Houck
In 1995, when presented with the same exact issue we are presented with today-construing the term "weapon" as used in the reclassification statute-this Court engaged in the necessary statutory construction analysis. Houck , 652 So.2d at 360.[4] This Court first concluded that "to determine whether what is used in the commission of a felony is a weapon within the meaning of the statute ... the trial court must use the common or ordinary meaning of the word." Id. We then explained that the dictionary defined "weapon" as "[a]n instrument of attack or defense in combat, as a gun or sword" and "[a] means used to defend against or defeat another." Id. (quoting American Heritage College Dictionary 1529 (3d ed. 1993) ). Applying that definition to the object at issue in that case, this Court concluded that "[a] paved surface is not commonly understood to be an instrument for combat against another person." Id.
Significant to this Court's construction of the term "weapon" in Houck was the purpose of the reclassification statute. This Court quoted with approval the reasoning of the district court that "[t]he obvious legislative intent reflected by section 775.087 is to provide harsher punishment for, and hopefully deter, those persons who use instruments commonly recognized as having the purpose to inflict death and serious bodily injury upon other persons." Id. (emphasis supplied) (quoting Houck v. State , 634 So.2d 180, 184 (Fla. 5th DCA 1994) ).
This Court even went so far as to invite the Legislature to amend the reclassification statute if it disagreed with this Court's construction of the statute, stating that "if the word 'weapon' is to be given a meaning other than the common dictionary definition set forth in" Houck , "it is within the province of the legislature to provide that definition." Id. Significantly, to this day, the Legislature has chosen not to define the word "weapon" in the statute, and has not otherwise made any amendments to that part of the statute. See Jones v. ETS of New Orleans, Inc. , 793 So.2d 912, 917 (Fla. 2001) ("[T]he legislature is presumed to have adopted prior judicial constructions of a law unless a contrary intention is expressed in [a] new version." (quoting City of Hollywood v. Lombardi , 770 So.2d 1196, 1202 (Fla. 2000) ) ).
Because the Legislature has never amended the statute as to the meaning of "weapon" after this Court's decision in *710 Houck , I would continue to adhere to that decision. However, because the majority concludes that this Court's construction of the word in Houck was "contrary to the usual meaning of the word," majority op. at 705, I turn to conduct the necessary statutory construction analysis.
Statutory Construction
"A court's purpose in construing a statute is to give effect to legislative intent, which is the polestar that guides the court in statutory construction." Larimore v. State , 2 So.3d 101, 106 (Fla. 2008). "Where the Legislature does not define the words used in a statute, this Court first examines the plain language of the statute ...." Paul v. State , 129 So.3d 1058, 1064 (Fla. 2013). "In ascertaining the plain meaning of statutory language, consulting dictionary definitions is appropriate." State v. Weeks , 202 So.3d 1, 7 (Fla. 2016).
The majority concludes that "the plain and ordinary meaning of the word 'weapon' includes not only those objects designed with the purpose of injuring or killing another, such as guns, clubs, or swords, but also any object used with the intent to cause harm." Majority op. at 705 (emphasis added). In reaching this conclusion, the majority asserts that this is "evident in dictionary definitions," Id. , such as Black's Law Dictionary , which defines "weapon" as "[a]n instrument used or designed to be used" to inflict harm. Black's Law Dictionary 1827 (10th ed. 2014) (emphasis added). In citing the definition from Black's Law Dictionary , however, the majority glosses over the fact that the dictionary included an alternative definition with the use of "or." That the dictionary provides multiple definitions creates ambiguity as to which meaning the Legislature intended to employ-instruments that are "used" to inflict harm or instruments that are "designed to be used" to inflict harm.
Further, when this Court determined the definition of "weapon" in Houck , we relied on another commonly used definition as set forth in the American Heritage College Dictionary -"[a]n instrument of attack or defense in combat, as a gun or sword " or "[a] means used to defend against or defeat another." American Heritage College Dictionary (4th ed. 2000) (emphasis added); see 652 So.2d at 360. Thus, because dictionary definitions "are unavailing in ascertaining legislative intent," this Court should "look to other canons of statutory construction to derive legislative intent," particularly where, as here, the Legislature has not amended the reclassification statute since this Court's decision in Houck more than twenty years ago. Weeks , 202 So.3d at 7-8.
One such canon is ejusdem generis , "which states that when a general phrase follows a list of specifics, the general phrase will be interpreted to include only items of the same type as those listed." State v. Hearns , 961 So.2d 211, 219 (Fla. 2007). "A related canon of statutory construction is noscitur a sociis , which instructs that 'a word is known by the company it keeps.' " Weeks , 202 So.3d at 8 (quoting Nehme v. Smithkline Beecham Clinical Labs., Inc. , 863 So.2d 201, 205 (Fla. 2003) ). In the reclassification statute, the Legislature chose to use the phrase "any weapon or firearm." § 775.087(1). While that does not mean that the Legislature intended to include only firearms, the fact that it listed specifically firearms as an alternative certainly suggests that the Legislature intended to narrowly define the term "weapon."
Another important canon of statutory construction instructs that "statutes which relate to the same or closely related subjects should be read in pari materia." State v. Fuchs , 769 So.2d 1006, 1009 (Fla. 2000). Relevant here, *711 section 790.001(13), Florida Statutes (2017), which is the only section in Florida Statutes that defines "weapon," defines the term as "any dirk, knife, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife, plastic knife, or blunt-bladed table knife."[5] While this list is non-exhaustive, it clearly denotes objects that are "commonly understood to be ... instrument[s] for combat against another person." Houck , 652 So.2d at 360.
Finally, and significantly, because the majority acknowledges that the meaning of "weapon" can be as narrow as an object that is "designed with the purpose of injuring or killing another," or as broad as "any object used with the intent to cause harm," the rule of lenity should be applied. Majority op. at 705. The rule of lenity instructs that when statutory language "is susceptible of different constructions, it shall be construed most favorably to the accused." § 775.021(1), Fla. Stat. (2017) ; see also Paul , 129 So.3d at 1064 (explaining that where "definiteness is lacking, a statute must be construed in the manner most favorable to the accused." (quoting Perkins v. State , 576 So.2d 1310, 1312 (Fla. 1991) ) ). In Florida, the rule of lenity is "not just an interpretative tool, but a statutory directive." Weeks , 202 So.3d at 8 (quoting Kasischke v. State , 991 So.2d 803, 814 (Fla. 2008) ).
Consideration of these canons of statutory construction, alongside the stated purpose of the reclassification statute and the fact that the reclassification statute has not been amended since Houck , compels the conclusion that the Legislature intended a narrower definition of "weapon" than the one adopted by the majority today. Instead of considering the statutory definition of "weapon" and relevant canons of statutory construction to discern the Legislature's intent, the majority cites a number of cases from this Court to support its determination "that any object can be a weapon if it is used as one." Majority op. at 706. However, none of these cases offers the support the majority asserts they do. First, many of the cases cited by the majority predate this Court's decision in Houck . And, of those that do not predate Houck , none involves defining the term "weapon" for purposes of the reclassification statute. See Guardado v. State , 965 So.2d 108, 117 (Fla. 2007) ; Buzia v. State , 926 So.2d 1203, 1215-16 (Fla. 2006) ; Nelson v. State , 850 So.2d 514, 527-28 (Fla. 2003) ; Sireci v. Moore , 825 So.2d 882, 886 (Fla. 2002) ; Lawrence v. State , 698 So.2d 1219, 1221 (Fla. 1997) ; Dale v. State , 703 So.2d 1045, 1046-47 (Fla. 1997).
In Buzia , Nelson , Sireci , and Lawrence , the issue was whether there was sufficient evidence to sustain the cold, calculated, and premeditated (CCP) aggravating factor in a death penalty case. In Guardado , the Court merely referred to the defendant's use of a knife and breaker bar when discussing the conviction of robbery with a weapon. Finally, although this Court in Dale stated that the standard jury instruction for "weapon," which was used in this case, was "a correct statement of law," that case involved whether a BB gun could be considered a deadly weapon. 703 So.2d at 1046-47. Thus, in none of the post- Houck cases cited by the majority was the issue of whether certain objects constituted "weapons" for purposes of the reclassification statute squarely before the Court.
Construing the term narrowly, and in favor of the accused, I would conclude that there should be an explicit finding that the defendant intended to use the object to inflict harm before a felony can be reclassified. Failure to construe the term in this *712 manner will lead to reclassification in any and every situation where any object is used to inflict harm on another. If this is what the Legislature intended, one has to ask what purpose a separate reclassification statute serves. Stated another way, construing "weapon" as the majority does today renders the purpose of the reclassification statute meaningless. See State v. Bodden , 877 So.2d 680, 686 (Fla. 2004) ("[C]ourts should avoid readings that would render part of a statute meaningless." (quoting State v. Goode , 830 So.2d 817, 824 (Fla. 2002) ) ).
CONCLUSION
For these reasons, I dissent from the majority's adopted definition of "weapon" for purposes of the reclassification statute, which would include virtually any object. Instead, I would reaffirm Houck , or, in the alternative, require an explicit finding of intent before a felony can be reclassified. I would therefore quash the decision of the First District in Shepard , and approve the decision of the Second District Court of Appeal in Gonzalez v. State , 197 So.3d 84 (Fla. 2d DCA 2016).

Although the First District affirmed the trial court's reclassification of the manslaughter conviction to a first-degree felony, it reversed Shepard's sentence and remanded for resentencing, concluding that the trial court improperly considered Shepard's lack of remorse when sentencing him. Shepard v. State , 227 So.3d 746, 749 (Fla. 1st DCA 2017).

In Houck , this Court construed the 1991 version of the reclassification statute. 652 So.2d at 359. However, the 1991 version is essentially the same as the 2011 version-the version at issue in this case. Whereas the 2011 version says "threatens to use, or attempts to use," the 1991 version simply stated "threatens, or attempts to use." Compare § 775.087(1), Fla. Stat. (2011), with § 775.087(1), Fla. Stat. (1991). This minor change has no effect for purposes of the issue before us today.

While this definition appears in a separate chapter of Florida Statutes from the reclassification statute, it is located in the same part: Part XLVI-"Crimes."