DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CASSANOVA GABRIEL,**
Petitioner,

v.

**STATE OF FLORIDA,**
Respondent.

No. 4D2024-1502

[October 16, 2024]

Petition for writ of certiorari to the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Scott Suskauer, Judge; L.T. Case No. 50-2023-CF-000714.

Carey Haughwout, Public Defender, and Robert Porter, Assistant Public Defender, West Palm Beach, for petitioner.

Ashley Moody, Attorney General, Tallahassee, and Luke R. Napodano, Senior Assistant Attorney General, West Palm Beach, for respondent.

CONNER, J.

Petitioner Cassanova Gabriel seeks a writ of certiorari quashing the order striking his motion to dismiss. The motion to dismiss asserted Stand Your Ground (SYG) immunity from prosecution for the crimes of cruelty to animals while in possession of a firearm, discharging a firearm in public, and discharging a firearm in a residential area. Because the trial court departed from the essential requirements of law in its interpretation of the scope of immunity granted by section 776.032(1), Florida Statutes (2022), the petitioner suffered irreparable harm when the trial court deprived him of his procedural right to a hearing to determine whether he is entitled to SYG immunity. As a result, we quash the order striking the petitioner's motion to dismiss and remand for further proceedings.

*Background*

The petitioner was walking his small dog when a large pit bulldog came around the corner of a building. The pit bull allegedly made threatening sounds and moved toward the petitioner and his dog. The petitioner tried

to kick the pit bull away, which caused the pit bull to become even more aggressive. The petitioner then tried to scare the pit bull away by firing warning shots with a gun over the pit bull's head, but allegedly the pit bull continued to attack, pinning the petitioner and his dog into a corner. Allegedly perceiving no other choice, the petitioner shot and killed the pit bull.

The pit bull's owner, who had been walking the pit bull without a leash, came around the corner of the building and asked what happened. The petitioner gave his version of the events to the pit bull's owner and then left.

After the state filed charges, the petitioner moved to dismiss the prosecution based on immunity under section 776.012(2), Florida Statutes (2022) (providing for the justifiable use of deadly force in defense of person), and section 776.032(1), Florida Statutes (2022) (providing for immunity from prosecution when force is used as permitted by section 776.012). The petitioner sought an evidentiary hearing.

The state opposed the petitioner's attempt to assert SYG immunity from prosecution, arguing that the statutory language authorizes deadly force only by a person against <u>another person</u> and does not apply to the use of deadly force against <u>an animal</u>.

After hearing argument from both sides, the trial court agreed with the state and struck the motion to dismiss, concluding that immunity from prosecution pursuant to section 776.032 does not apply to a person who has used deadly force against an animal, but instead "is applicable only in cases involving person to person interactions."

The petitioner timely sought certiorari review of the trial court's denial of his request for a hearing on his SYG immunity claim.

*Certiorari Analysis*

A petition for writ of certiorari is the proper vehicle to seek appellate relief from an order striking a motion to dismiss asserting immunity under section 776.032. *See Acostafigueroa v. State*, 373 So. 3d 908, 910 (Fla. 4th DCA 2023) (noting certiorari relief is appropriate when "the trial court's ruling is flawed by legal error thereby precluding [a] proper determination on the movant's immunity claim" (quoting *Jimenez v. State*, 353 So. 3d 1286, 1287 (Fla. 2d DCA 2023))). As our sister court has explained:

Generally, Florida's appellate courts are called upon to review orders denying a defendant's SYG motion via a petition for writ of prohibition, rather than certiorari. Where, however, the trial court does not reach the merits of an SYG motion due to an alleged misapplication of the SYG statutes or Florida Rule of Criminal Procedure 3.190 (the procedural rule governing SYG motions), Florida's appellate courts have employed certiorari review of the order.

*Maslo v. State*, 390 So. 3d 720, 722 n.2 (Fla. 3d DCA 2024) (collecting cases).

When interpreting a statute, judges must consider "'all the textual and structural clues' that bear on the meaning of a disputed text." *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) (quoting *Alachua County v. Watson*, 333 So. 3d 162, 169 (Fla. 2022)). Additionally, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

We first consider the language of section 776.012, authorizing the use or threatened use of force in defense of person:

(1) A person is justified in using or threatening to use force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. A person who uses or threatens to use force in accordance with this subsection does not have a duty to retreat before using or threatening to use such force.

(2) A person is justified in using or threatening to use deadly force if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony. A person who uses or threatens to use deadly force in accordance with this subsection does not have a duty to retreat and has the right to stand his or her ground if the person using or threatening to use the deadly force is not engaged in a criminal activity and is in a place where he or she has a right to be.

3

§ 776.012, Fla. Stat. (2022) (emphasis added).

Section 776.012's plain text distinguishes the authorizations for the use of nondeadly and deadly force in defense of person. <u>Nondeadly force in defense of person</u> is authorized when used against "another" to defend "against the other's imminent use of unlawful force." § 776.012(1), Fla. Stat. (2022). <u>Deadly force in defense of person</u> is authorized when "necessary to prevent imminent death or great bodily harm to himself or herself or another" or "to prevent the imminent commission of a forcible felony." § 776.012(2), Fla. Stat. (2022). As can be seen from section 776.012's plain text, deadly force, in contrast to nondeadly force, does not include language that the force must always be used against a person. Thus, we conclude that section 776.012(2) authorizes deadly force against an animal when the person using or threatening to use the force "believes such force is necessary to prevent imminent death or great bodily harm to himself or herself or another."[1]

The petitioner's motion to dismiss travels on the authorization of deadly (not nondeadly) force in defense of person, specifically under section 776.012(2)'s use of the phrase "necessary to prevent imminent death or great bodily harm to himself or herself or another." Thus, we agree that section 776.012(2)'s plain, unambiguous text does not require that the deadly force be used against a person, rather than against an animal. And we will not add words limiting section 776.012(2)'s application to force solely against persons and not animals. *See Fagan v. Jackson Cnty. Hosp. Dist.*, 379 So. 3d 1213, 1215 (Fla. 1st DCA 2024) ("We are not at liberty to add words to statutes that were not placed there by the Legislature." (quoting *Hayes v. State*, 750 So. 2d 1, 4 (Fla. 1999))).

Section 776.032(1), which grants immunity from criminal and civil actions for authorized uses of force, does not change this result. It provides:

> A person who uses or threatens to use force as permitted in s. 776.012 . . . is justified in such conduct and <u>is immune from criminal prosecution and civil action for the use or threatened use of such force by the person, personal representative, or</u>

---

[1] The trial court reasoned that, in the context of deadly force being used to prevent a forcible felony under section 776.012(2), an animal cannot commit a forcible felony. However, we can envision situations in which a dog could be used by an assailant to commit a forcible felony.

4

> heirs of the person against whom the force was used or threatened . . . .

§ 776.032(1), Fla. Stat. (2022) (emphasis added).[2]

The state argues this provision necessarily excludes immunity for deadly force used against an animal because it only covers claims by or on behalf of the "person against whom the force was used." *Id.* (emphasis added). The trial court agreed with the state's reasoning. However, the reasoning is flawed.

The primary flaw with this reasoning is that section 776.032(1) frames entitlement to immunity with reference to who brings the action. Thus, the words, "immune from . . . civil action for the use or threatened use of such force by the person, personal representative, or heirs of the person against whom the force was used or threatened" clearly means that a defendant in a civil action is immune from civil prosecution by the plaintiff/decedent if the defendant used or threatened to use force permitted under section 776.012 against the plaintiff/decedent. In other words, "by the person, personal representative, or heirs" clearly and unambiguously apply to the status of a plaintiff in civil actions alone, thereby limiting immunity to the use of force against another person, but such limitation does not apply to a criminal prosecution.

Because entitlement to immunity is framed from the perspective of who brings the action, immunity as to criminal prosecutions could not be limited to force used or threatened to be used against a person, as the state contends, because section 776.032(1) does not limit immunity in criminal prosecutions in the same manner as civil actions. A criminal prosecution is always brought by the state, and alleged victims and their agents do not make unilateral prosecutorial decisions. Because a criminal prosecution is never initiated by a "person, personal representative, or heirs of the person," no portion of this language could ever modify "criminal prosecution." If the legislature intended such a result, it would have written: "A person . . . is immune from criminal prosecution and civil action for the use or threatened use of such force by the defendant against

---

[2] We acknowledge that additional statutory language, namely in sections 776.013 and 776.031, Florida Statutes (2022), appears to authorize the use of force in other contexts involving force against another person, rather than against an animal. These statutes do not apply here, and we note that the legislature has the prerogative to determine the various circumstances in which the use of force is authorized, in addition to authorizations under the common law.

5

the victim, person, personal representative, or heirs of the person against whom the force was used or threatened . . . ." Thus, from the specific context of the words used in section 776.032(1), we conclude the legislature was clear that immunity from a criminal prosecution is not limited to the use of force against a person.[3]

Even if we were to determine section 776.032(1) to be ambiguous as to whether immunity applies to deadly force against an animal, we would still conclude the trial court erred in its interpretation for failure to apply the rule of lenity. *See Key v. State*, 296 So. 3d 469, 471 (Fla. 4th DCA 2020) ("The rule requires that '[a]ny ambiguity or situations in which statutory language is susceptible to differing constructions must be resolved in favor of the person charged with an offense.'" (quoting *State v. Byars*, 823 So. 2d 740, 742 (Fla. 2002))).

*Conclusion*

We conclude as a matter of law, based on section 776.012(2)'s and section 776.032(1)'s plain meaning and context, a person is immune from criminal prosecution for the use of deadly force against an animal where the person has a reasonable belief that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another. Having determined the trial court misinterpreted the statutory language and departed from the essential requirements of law, we grant the petition, quash the order striking the petitioner's motion to dismiss, and remand for further proceedings consistent with this opinion.[4]

*Petition granted.*

DAMOORGIAN, J., concurs.
ARTAU, J., concurs specially with opinion.

ARTAU, J., concurring specially.

I concur with the result reached by the majority but write separately to explain my disagreement with its statutory interpretation analysis.

---

[3] We do not address the reach of section 776.032(1) immunity from civil actions regarding use of force against an animal, as that issue is not before us.

[4] We recognize our opinion may make criminal prosecutions for animal cruelty more challenging for the state when a defendant claims self-defense under section 776.012(2). However, it is up to the legislature to address the issue as it sees fit.

Even though the majority recognizes that we must "*exhaust 'all the textual and structural clues*' that bear on the meaning of a disputed text" with "the aid of whatever canons might shed light on the interpretive issues in dispute[,]" it fails to adequately apply this principle. *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) (emphasis added) (quoting *Alachua Cnty. v. Watson*, 333 So. 3d 162, 169 (Fla. 2022)). Rather than exhausting other applicable interpretive canons, the majority skips over this requirement to unnecessarily apply the rule of lenity. However, as our supreme court explained in *Conage*, "some *canons, like the rule of lenity*, by their own terms *come into play only after other interpretive tools have been exhausted.*" *Id.* (emphasis added).

Instead of applying the rule of lenity, the majority should have applied the rule of the last antecedent. Writing for a unanimous Supreme Court in *Barnhart v. Thomas*, Justice Scalia explained that "the grammatical 'rule of the last antecedent,'" as a canon of statutory interpretation, provides that "a limiting clause or phrase . . . should ordinarily be read as modifying *only* the noun or phrase that it *immediately* follows." 540 U.S. 20, 26 (2003) (emphasis added). Our supreme court has also adopted the rule of the last antecedent as a traditional canon of statutory construction. *See, e.g.*, *Kasischke v. State*, 991 So. 2d 803, 811 (Fla. 2008) ("One such canon is the doctrine of the last antecedent, under which 'relative and qualifying words, phrases and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to, or including, others more remote.'" (quoting *City of St. Petersburg v. Nasworthy*, 751 So. 2d 772, 774 (Fla. 1st DCA 2000))).

"While this rule is not an absolute and can assuredly be overcome by other indicia of meaning, . . . construing a statute in accord with the rule is 'quite sensible as a matter of grammar.'" *Barnhart*, 540 U.S. at 26 (quoting *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 330 (1993)). Indeed, the rule of the last antecedent is a traditional, time-honored canon of statutory construction that has been applied "from our earliest decisions to our most recent." *Lockhart v. United States*, 577 U.S. 347, 351 (2016).

The Stand Your Ground statutory provision in dispute provides that "[a] person who uses or threatens to use force as permitted in s. 776.012 . . . is justified in such conduct and is immune from criminal prosecution and civil action *for the use or threatened use of such force by the person, personal representative, or heirs of the person against whom the force was used or threatened*," except in circumstances not applicable here. § 776.032(1), Fla. Stat. (2022) (emphasis added).

Applied here, the rule of the last antecedent instructs us that the phrase—"for the use or threatened use of such force by the person, personal representative, or heirs of the person against whom the force was used or threatened"—applies only to its last antecedent—"civil action"—rather than the more remote antecedent—"criminal prosecution"—because the phrase immediately follows the term "civil action."

The absence of commas setting off the phrase from the terms "criminal prosecution" and "civil action" serves as additional evidence that the phrase applies only to its immediately preceding antecedent (i.e., the phrase's last antecedent—"civil action"). *See Kasischke*, 991 So. 2d at 812-13 ("Evidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma." (quoting 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 47.33 (7th ed. 2007))); *see also Fettig's Constr., Inc. v. Paradise Props. & Interiors LLC*, 305 So. 3d 555, 560 (Fla. 4th DCA 2020) (applying the rule of the last antecedent because "a qualifying phrase is read as limited to the last item in a series when the phrase follows that item without a comma" (quoting *Jacques v. Dep't of Bus. & Pro. Regul., Div. of Pari-Mutuel Wagering*, 15 So. 3d 793, 796 (Fla. 1st DCA 2009))).

Furthermore, interpreting the phrase here in accordance with the rule of the last antecedent is consistent with how the phrase is used in the context of section 776.032(1) because, as the majority notes, the phrase makes Stand Your Ground immunity available based on who brings an action.  Thus, because only the State—and not "the person, personal representative, or heirs of the person against whom force was used"—can bring a "criminal prosecution," the phrase necessarily modifies only its last antecedent since it is a listing limited to parties who could only bring a "civil action."

The majority hypothetically suggests that if the Legislature intended the interpretation argued by the State, the Legislature would have revised section 776.032(1) to say: "A person . . . is immune from criminal prosecution and *civil action for the use or threatened use of such force by the defendant against the victim, person, personal representative, or heirs* of the person against whom the force was used or threatened[.]" (emphasis added).

However, applying the rule of the last antecedent to the majority's hypothetical revision of section 776.032(1) would not result in any interpretation that would meaningfully differ from our interpretation here. In other words, the justifiable "use or threatened use of such force" against

an animal in the hypothetical revision would also be immunized from "criminal prosecution" because the modifying phrase still follows its last antecedent—"civil action"—and is not set off by commas.

Moreover, even if the Legislature had included the word "victim," as the majority hypothetically suggests, the modifying phrase would still not necessarily apply to the more remote antecedent—"criminal prosecution." While a "victim" can be "[a] person harmed by a crime, [a victim can also be a person harmed by a] *tort, or other wrong." See Victim*, Black's Law Dictionary (12th ed. 2024) (emphasis added). The *noscitur a sociis* canon provides that "words grouped in a list should be given related meanings." Antonin Scalia & Brian Garner, *Reading Law: The Interpretation of Legal Texts* § 31, p. 195 (2012). "While 'not an inescapable rule,' this canon 'is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to [statutes].'" *McDonnell v. United States*, 579 U.S. 550, 569 (2016) (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)).

Thus, the inclusion of the word "victim" among a list of parties who could bring a "civil action" would contextually be interpreted as referring to a "victim" of a tort who could bring a "civil action" for damage inflicted by the use of force rather than as the victim of a crime because the canon of *noscitur a sociis* informs us that we should interpret it consistent with the context of the associated words that bear on one another's meaning. *See Fischer v. United States*, 603 U.S. ----, 144 S. Ct. 2176, 2183-84 (2024) ("[T]he canon of *noscitur a sociis* teaches that a word is 'given more precise content by the neighboring words with which it is associated[]' [to] 'avoid[] ascribing to one word a meaning so broad that it is inconsistent with' 'the company it keeps.'" (internal citation omitted) (first quoting *United States v. Williams*, 553 U.S. 285, 294 (2008); and then quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995))); *see also State v. Weeks*, 202 So. 3d 1, 8 (Fla. 2016) (The *noscitur a sociis* canon "instructs that 'a word is known by the company it keeps.'" (quoting *Nehme v. Smithkline Beecham Clinical Labs., Inc.*, 863 So. 2d 201, 205 (Fla. 2003)))).

Regardless of how we should interpret a hypothetical statute, the majority fails to address the rule of the last antecedent and instead employs the rule of lenity to discern the meaning of the actual statute in dispute. However, the rule of lenity is "a canon of last resort." *Paul v. State*, 129 So. 3d 1058, 1064 (Fla. 2013) (citing *Kasischke*, 991 So. 2d at 814).

As our supreme court explained in *Conage*, "[t]hrough section 775.021(1), Florida Statutes, the Legislature has elevated lenity from a

canon of construction to a statutory command." 346 So. 3d at 602. But "[i]n Florida, the rule of lenity is a default rule that comes into play at the end of the interpretative process" *only* "if the statute remains ambiguous after consulting traditional canons of statutory construction." *Id.* at 603 (quoting *Paul*, 129 So. 3d at 1064); *see also* § 775.021(1), Fla. Stat. (2022) ("[*W*]*hen the language is susceptible of differing constructions*, it shall be construed most favorably to the accused." (emphasis added)). In other words, the rule of lenity should not be employed unless a statute remains ambiguous after all other traditional canons of construction have been exhausted.

In fact, in a similar case where applying the rule of the last antecedent resulted in a logical construction of a federal statute, the Supreme Court of the United States explained that it would be improper to employ the rule of lenity to come to a different construction because the lenity canon should be applied only as a last resort. *See Lockhart*, 577 U.S. at 361 ("*We have used the lenity principle to resolve ambiguity* in favor of the defendant *only* 'at the end of the process of construing what Congress has expressed' *when the ordinary canons of statutory construction have revealed no satisfactory construction.*" (emphasis added) (quoting *Callanan v. United States*, 364 U.S. 587, 596 (1961))). Instead, the Supreme Court concluded that where "the rule of the last antecedent is well supported by context and [the] alternative is not[,] [*w*]*e will not apply the rule of lenity to override a sensible grammatical principle buttressed by the statute's text and structure.*" *Id.* at 361 (emphasis added).

Likewise, in my view, we should not resort to the rule of lenity here where the traditional rule of the last antecedent provides a "sensible grammatical principle buttressed by the statute's text and structure" supporting a logical construction that does not otherwise differ from the construction arrived at by the majority. *See id.*

Nonetheless, I agree with the majority's conclusion that the defendant presented a prima facie claim for Stand Your Ground immunity, thereby entitling him to an immunity hearing. *See* § 776.032(4), Fla. Stat. (2022) ("In a criminal prosecution, once a prima facie claim of self-defense immunity from criminal prosecution has been raised by the defendant at a pretrial immunity hearing, the burden of proof by clear and convincing evidence is on the party seeking to overcome the immunity from criminal prosecution provided in subsection (1)[—i.e., the State].").[5]

---

[5] While noting "that there is additional statutory language, namely in sections 776.013 and 776.031, Florida Statutes (2022), that appears to authorize the use of force in other contexts involving force against another person, rather than

However, while I come to the same conclusion as the majority, I do so for different reasons, consistent with the principles enunciated by our supreme court in *Conage,* with due regard to the rule of the last antecedent as a "textual and structural clue that bear[s] on the meaning of" section 776.032(1).  *See* 346 So. 3d at 598.

*     *     *

**_Not final until disposition of timely filed motion for rehearing._**

---

against an animal[,]" the majority acknowledges that an animal could be used in the commission of a forcible felony.  Because those statutory provisions could otherwise be invoked to justify the use or threatened use of deadly force to prevent the commission of a forcible felony, they also provide Stand Your Ground immunity when such force is necessary against an animal involved in the commission of a forcible felony.  Moreover, whenever the use or threatened use of deadly force is justified, anything less would also be justified because "the legal question to be resolved in all [Stand Your Ground] cases is whether 'a reasonable and prudent person in the same position as the defendant would believe' that the level of *authorized force used was 'necessary' to prevent the harm or offense* for which such force is statutorily permitted."  *See Paese v. State,* 381 So. 3d 4, 12 (Fla. 4th DCA 2024) (emphasis added) (quoting *Bouie v. State,* 292 So. 3d 471, 481 (Fla. 2d DCA 2020)).  In other words, if the use or threatened use of deadly force is justified, any action or threat short of deadly force would also be justified if used to prevent the harm or offense for which the use or threatened use of deadly force would be justified.

11